[No. 1197.  Decided January 14, 1895.]

THE STATE OF WASHINGTON, *Respondent, v.* JOHN WHITE, *Appellant.*

HOMICIDE—ACCESSORY—INFORMATION — EVIDENCE—COMPETENCY OF OPIUM CONSUMER—INSTRUCTIONS.

Under the statutes of this state, an information charging the commission of a crime by an accessory as though he were a principal, is proper.

The admission of certain maps in evidence upon the identification of a witness hostile to defendant is not error, when there is no showing of inaccuracy in the maps.

The testimony of an opium consumer, while unreliable, is competent, but juries should be cautioned as to the credence to be given to it.

In the trial of a murder case, an exhibition on the part of the court, in the presence of the jury, of strong feeling against the counsel for the defense, culminating in a fine for contempt, occasioned merely by the counsel's insisting on a right to be heard concerning

an objection to the relevancy of a question propounded on examination, is such misconduct of the court as to constitute prejudicial error.

Where the theory of the prosecution in a trial for murder is that the defendant procured, counseled, aided and abetted the killing of deceased by others, and the evidence all tended to support that position, it is erroneous to charge the jury that if they believe that defendant fired the fatal shot, they may find him guilty.

A charge to the jury that if the killing of deceased has been proved beyond a reasonable doubt, the law pronounces such killing murder, is erroneous, although the court may have elsewhere defined murder in the first and second degrees.

Although it is proper to charge the jury that they have a right to consider the interest of the accused in the verdict, it is error to distinguish his testimony by further charging that they "are not required to receive blindly the testimony of such accused person as true; but you are to consider whether it is true and made in good faith or only for the purpose of avoiding conviction."

Where the theory of the defense is that while the defendant was defending himself against assault, some person, unsolicited by him, and unknown to him until afterwards, fired and killed his assailant in his defense, it is error to refuse a request for a charge that " if the jury believe from the evidence that the defendant did not procure or incite the person firing such shot to do so, then the jury must find the defendant not guilty."

*Appeal from Superior Court, Snohomish County.*

*A. D. Warner,* for appellant.

*L. C. Whitney,* Prosecuting Attorney, *James A. Haight* and *A. D. Austin,* for the State.

The opinion of the court was delivered by

Stiles, J.—The information charged the appellant and three other persons with the premeditated murder of George Schultz by shooting. The information was in the usual form, except that it charged four persons with the crime instead of one, and we hold it sufficient. The fact that the theory of the state was that the four persons charged had conspired together to kill Schultz, and that the evidence established that appellant did not fire the shots which caused

his death, can have no effect upon the sufficiency of the pleading. *State v. Duncan*, 7 Wash. 336 (35 Pac. 117).

Certain maps were admitted upon the identification of a witness who, appellant claims, was shown to be hostile to him in a marked degree; but in this there was no error. The accuracy of the maps was tested in many ways, and appellant has deemed them so slightly material that he has not attached them to the record.

The court admitted the testimony of one Marsh, a confessed opium consumer, who admitted that he was under the influence of opium, both at the time of the occurrences to which he testified, and when he was on the witness stand. Our law makes all persons competent witnesses, in all cases, and we know of no sufficient reason why a person who uses opium should be excluded. At the same time the authorities agree that the testimony of such persons is very unreliable, and juries should be carefully cautioned as to the credence to be given to it. 2 Wharton & Stillé, Med. Jur., § 334; 1 Rice, Evidence, p. 625.

Caution was given in instruction 33, at the request of appellant, with an immaterial omission.

On the second day of the trial (which occupied many days), and while the first witness for the state was being cross-examined, a rather remarkable incident occurred. The case had proceeded for hours without an objection, and the immediate subject of inquiry was about a small fight which the witness and appellant had had over the main cause of the whole trouble—a neighborhood road. Counsel for the state made an objection to the relevancy of a question, and the court sustained it without waiting for the other side to support it.

" ROCHESTER (for appellant): I would like to be heard before your honor sustains the objection.

COURT: That matter has been gone into several times; that is the reason I sustain the objection.

ROCHESTER: I would like to have the privilege, when objections are made to questions—

COURT: I don't always stop to listen to arguments on every objection.

ROCHESTER :   I except to the court's not hearing me upon
the objection.

COURT :   You can have an exception to the question.

ROCHESTER :   I wish an exception to the court's refusal
to hear me on argument.

COURT :   I tell you now I want you to stop this kind of
argument.   I have given you an exception.

MR. WARNER (for appellant):   If the court please :
Your honor well knows, upon reading the text books and
authorities of the numbers of murder cases—that many a
murder case is reversed—.

COURT :   I told you I didn't care to hear any more talk
on this matter at all.   I have given you an exception here,
and if there has anything gone before this jury, you gentle-
men are responsible for it yourselves, and I don't care to
hear anything more about it.   I don't want it to go before
the jury.

WARNER :   If the court will not hear us in this case we
cannot go on.

COURT :   Mr. Clerk, you may enter up a fine against
this man—you may enter up a fine of $50 against this man,
and stand committed to jail until the fine is paid.   Mr.
Sheriff, take charge of this man.

WARNER :   I would like the record to show the reason
of the fine.   Mr. Clerk, have you a blank check?   I will
pay the fine.

COURT :   You can proceed with the case.''

It is difficult to see what all this was about.   The case,
which was yet in its infancy, had proceeded smoothly enough,
the court having sustained fully half the objections made by
counsel for the defense.   The court's reason for sustaining
the objection made by counsel for the state was good enough,
under the circumstances, and counsel ought to have been
satisfied with it without any argument.   The only cause of
aggravation which the court had as against Mr. Rochester
was that he was doing what attorneys often do unneces-
sarily, viz., insisting upon the court's *allowing* an exception,
when all that an attorney has to do in any case is to *take* an
exception.   Evidently, upon the record (and we have re-
cited it all), all that was necessary or proper in the presence
of the jury was a quiet word of admonition, and the case
would have proceeded as before.   But the appellant's inter-

est in the matter is not that his attorneys were summarily
dealt with, and one of them fined excessively, considering
the facts, and ordered into the instant custody of the sheriff.
His cause of complaint is that all this took place in the pres-
ence of the jury, and with such an exhibition of feeling on
the part of the court that the jury, which is an instrument
most sensitive to every impression coming from the court,
must have reasoned that appellant's counsel had been guilty
of some very grave offense in the conduct of his case, to
their material depreciation as fair and reputable attorneys.
In cases of so great gravity as this, such conduct on the
part of the trial court will not do, and, when it occurs, the
least that an accused person can demand is that he be given
an opportunity for a hearing of his case before a jury not sub-
jected to such influences.

The theory of the state was that, as the result of a long
contest between neighbors over the maintenance of a road
through government land settled upon by White and the
Robinsons, the four persons accused of the homicide, which
included the senior Robinson, one of his sons, and an em-
ployee named Livingstone, had conspired on a certain day
to waylay and assassinate Schultz and one Smith (who was
killed at the same time), who were partisans of those seek-
ing to maintain the road in a certain locality. Nobody wit-
nessed the crime but those who were engaged in it, and aside
from admissions made by the defendants that the younger
Robinson and Livingstone had fired the fatal shots, the
state's case depended entirely upon circumstantial evidence ;
the fact of the shooting, the presence of all the defendants,
and the condition of the ground being relied upon to estab-
lish the confederation of the defendants, and the killing by
lying in wait. The shooting took place shortly after noon,
on a day succeeding a night during which there had been
a light fall of snow. Several witnesses testified to having
visited the place where the two bodies were found while they
were still there, and that the snow for a considerable space
about them was smooth and undisturbed except where
broken by the tracks of the two men, who must, according

to this evidence, have sunk down instantly dead from the effect of rifle balls shot clear through their bodies. Smith lay prone upon the ground, but Schultz had simply sunk down into a sitting posture and remained thus until found a few minutes later. Three axes were found close to the place where the two men were.

The defense contended that the snow was not undisturbed, but was all trampled over, and that the position of Schultz' body was not as represented. All of the defendants went upon the stand and agreed in their statements that, upon the day in question, White and the elder Robinson had gone out a short distance from the former's house for the purpose of obstructing the road by felling trees therein and putting up some bars; that while so engaged Schultz and Smith came to the place where Robinson was putting up the bars (their purpose in going there being to chop out and clear away the obstructions in the road, as proven by the state) and assaulted him; that Robinson made such outcry that White came to his rescue, and was immediately attacked by Schultz with his axe; that being driven to an extremity and in danger of being killed by Schultz's axe, White, lying upon the ground, shot at him with a 22 caliber revolver which he had, but did not disable him; and that at this moment, when both White and Robinson were in imminent danger of their lives, the younger Robinson and Livingstone came along from a hunting excursion, and seeing the position of affairs, shot and killed both men. Robinson, Sr., had a slight cut in the head and White had a slash in the muscles of the forearm, which they declared were made by their assailants, but which the state maintained were self inflicted. Schultz had a large bruise on the side of his head, which White asserted he made with the flat of his axe in the affray. The four defendants, immediately after the occurrence, went to Snohomish and surrendered themselves to the sheriff, claiming not, as yet, to know that Schultz and Smith were dead. Upon the trial, Robinson, Jr., and Livingstone stated unreservedly that they fired the only shots except those from the small pistol of White, Livingstone admitting that he

had shot Schultz, for causing whose death the information was filed.

Under these circumstances it was hardly proper for the court to say to the jury upon the separate trial of White, that if they believed that he fired the fatal shot into the body of Schultz, etc., they might find him guilty. The theory and contention of the state was that he had stood by and procured, counseled, aided and abetted the shooting by the two boys and the evidence all tended to support that position rather than that White had himself done any of the fatal shooting. Instructions should be made to fit the evidence, and not roam beyond it into the field of general probabilities. Of course the crime would be the same in either case, but the covering of so much unnecessary ground tends to confuse jurymen by making them forget what is really applicable.

Instruction 10 did not state the law correctly. It was as follows:

"You are further instructed, gentlemen of the jury, that if the killing of the person mentioned in the information is satisfactorily shown, by the evidence, beyond a reasonable doubt, to have been the act of the defendant, then the law pronounces such killing murder, unless it appear from the evidence that circumstances existed excusing or justifying or mitigating it so as to make it manslaughter, as explained in these instructions."

This charge could stand in any case only with the qualification that the kind of murder presumed from the mere fact of homicide with a deadly weapon, is murder in the second degree, and the only excuse which the state offers for it is that the jury found appellant guilty of murder in the first degree. *State v. Payne,* ante, p. 545.

There are cases where the charge here given has been sustained, when closely connected with further instructions concerning both degrees of murder, and the classes of facts necessary to support each ; but there was nothing of that in this case. Murder in the first, and murder in the second degree were defined, it is true, nearly in the language of the statute, but nothing more. But we do not concur in the

decisions alluded to. When the court tells a jury that from certain facts the law pronounces a prisoner guilty of murder,. it is at least as likely as not that jurymen will take the word in the popular sense, which is that "murder is a hanging matter," and that the crime in the first degree is meant. Nor would the charge, if properly qualified, be applicable to the case on trial, because nobody claimed, and the evidence did not pretend to show, that the killing of Schultz was the act of White, but the act of Livingstone, or Robinson, Jr., aided and abetted by White. The fact that the statute permits an accessory to be accused and tried as a principal does not do. away with the rule that the charge must be appropriate to. the evidence.

The 28th charge contained in substance the matters held objectionable in *Leonard v. Territory*, 2 Wash. T. 381 (7 Pac. 872), on the point of reasonable doubt ; the 27th charge contained all that was necessary on that subject.

The 2d charge was correctly given, under *State v. Nordstrom*, 7 Wash. 506 (35 Pac. 382), in so far as it told the jury that they had a right to consider the interest of the accused in the verdict. But the latter part of that instruction : "Therefore you are not required to receive blindly the testimony of such accused person as true ; but you are to consider whether it is true and made in good faith or only for the purpose of avoiding conviction," went beyond the province of the court. It was argumentative and cautionary, and placed the defendant in a different class from that of the other witnesses. Moreover, it laid down as the duty of the jury to scrutinize his testimony in a way that tended to discredit him. In *Nordstrom's case* we followed *Dodd v. Moore*, 92 Ind. 397, but in that case it was clearly pointed out that while it was proper to say to the jury that they had a right to consider the interest of the accused as a witness, it must be left to them to say as a fact whether that interest had, in any degree, warped or colored the testimony, without any intimation of suspicion from the court. In *Unruh v. State*, 105 Ind. 117 (4 N. E. 453), telling the jury that it was their duty to consider the interest of a witness whether

a party or not, was error.  See also *Bird v. State*, 107 Ind.
154 (8 N. E. 14).   To similar effect is *Hicks v. United
States*, 150 U. S. 442 (14 Sup. Ct. 147).

The first instruction asked by appellant should have been
given.   Had it been given it would have then been the only
instruction in the case which presented the real attitude of
the defense, viz., that appellant did not fire the shot which
killed Schultz, and did not procure, incite, aid or abet the
person who did fire it.   Instructions on self-defense were
given, but White did not himself kill in self-defense or
otherwise.   He maintained that while he was defending
himself against assault some person, unsolicited by him, and
unknown to him until afterwards, fired and killed his assail-
ant in his defense.   The 37th instruction went to justifica-
tion of this third person, but left out the idea involved in
appellant's claim that whether the third person was justified
or not, he, White, was blameless.

Thirteen separate instructions were given, each of which
stated to the jury upon what facts they might find the appel-
lant guilty, but aside from those directed to the subject of
self-defense there was not one which told them upon what
state of facts he might be found not guilty.   Remembering
that appellant all the time maintained that he did not fire
the fatal shot, and that the state never claimed, and does not
now claim, that he did fire it, his theory of defense that he
did not incite, aid or abet the person who did fire it, was en-
titled to recognition and clear instruction to the jury, to even
greater fullness than was embodied in the first instruction
requested.

Upon the facts of the case we should not be justified in
interfering ; but for the errors noticed the judgment is re-
versed and a new trial ordered.

DUNBAR, C. J., and ANDERS, J., concur.

HOYT, J. (*dissenting*).—I am unable to agree with the
conclusions of the majority of the court as stated in the
foregoing opinion.   There are only two of the reasons for
reversal that I think of sufficient importance to require at-

tention.  .One of these is the action of the court in impos-
ing a fine upon counsel for defendant during the progress of
the trial.   I agree with what is said by the majority as to
the impropriety of the proceeding.   There is nothing dis-
closed by the record sufficient to justify the court's action in
that respect.   On the contrary, if the facts stated therein
were all that induced such action, it was entirely unwar-
ranted.   It does not follow, however, that the people of the
state should be put to the expense of a re-trial of the cause.
It does not sufficiently appear that it was prejudicial to the
defendant to warrant a reversal.   In my opinion such action
instead of injuring the cause of the defendant with the jury
would have a tendency to excite their sympathy in his be-
half.

The other alleged error as to which I desire to say a word
is the one founded upon instruction number ten.   In my
opinion this instruction stated the law.   An instruction
similar to this, only that it stated that the presumption
would be that it was murder in the " second degree " was
sustained by this court in the case of *State v. Payne*, cited
in the foregoing opinion.   If it was " murder in the second
degree," it was " murder," and the instruction stated only a
fact deducible from our former decision.

It is claimed, however, that the jury might have assumed
that the facts stated would warrant the presumption that
murder in the first degree had been committed.   If the
instruction stood alone it might have been so construed, but
taken in connection with the other instructions it could not.
Such other instructions clearly defined murder in the first
degree, and such definition compared with what was said in
the instruction under consideration so limited and qualified
it that it was not possible that the jury could have been
misled thereby.

An instruction identical with this one was sustained by
the supreme court of the State of Missouri in *State v. Evans*,
65 Mo. 574, and I am content to follow the authority of
that learned court, especially when under all the circum-
stances I am satisfied the defendant could not have been

injured by the instruction. The evidence introduced upon the trial satisfies me that no other verdict could have been rightfully rendered. 'Such being the fact, the judgment should not be reversed unless it appeared from the record that error had been committed of such a nature as to have probably tended to the injury of the defendant.

SCOTT, J., concurs.