## COURT OF APPEALS.

### November, 1909.

## THE PEOPLE v. CHARLES BOWSER.

### (196 N. Y. 296.)

(1). MURDER—EVIDENCE HELD SUFFICIENT.

> Upon examination of the facts set forth in the record, on conviction of defendant of murder in the first degree, *held,* that the crime was conclusively established, and the attendant circumstances indicate beyond a reasonable doubt that it was not justifiable homicide; neither was it an accident nor an act of sudden impulse, but a deed of premeditation and deliberation.

(2). SAME—INTENT, DELIBERATION AND PREMEDITATION.

> Since the crime of murder in the first degree involves the elements of felonious intent, deliberation and premeditation, any evidence bearing upon either or all of these elements is admissible, and evidence for the purpose of showing ill-will on the part of the defendant toward the person killed is competent.

APPEAL from a judgment of the Supreme Court, rendered May 17, 1909, at a Trial Term for the county of New York, upon a verdict convicting the defendant of the crime of murder in the first degree.

The facts, so far as material, are stated in the opinion.

*Edmund B. Brown* for appellant. The court erred in permitting the witness for the people, Jennie Bowser, to testify to the alleged fact, that the defendant, Charles Bowser, had had Eugene Hutchinson arrested, over the objection and exception of the defendant. (*People v. Greenwall,* 108 N. Y. 296; *People v. Fitzgerald,* 156 N. Y. 253; *People v. Bennett,* 49 N. Y. 137; *People v. Owens,* 148 N. Y. 648; 1 Greenl. on Ev. § 13; *People v. Sutherland,* 154 N. Y. 345; *People v. Disner,* 192 N. Y. 80; *People v. Smith,* 172 N. Y. 234; *People v. Corey,*

148 N. Y. 476; *People v. Koerner,* 154 N. Y. 355; *People v. Wood,* 126 N. Y. 249). In derogation of section 480 of the Code of Criminal Procedure, the record in this case fails to show that the defendant was asked before judgment was passed upon him, whether he had any legal cause to show why judgment should not be passed against him. (*People v. Messner,* 45 N. Y. 1; *Graham v. People,* 63 Barb. 468; *Safford v. People,* 1 Park. Cr. Rep. 474).

*William Travers Jerome, District Attorney* (*Robert C. Taylor* of counsel), for respondent. The testimony of Jennie Bowser that the defendant had the deceased arrested was properly admitted. (*Friery v. People,* 2 Abb. Ct. App. Dec. 215; *People v. Gaimari,* 176 N. Y. 84; *People v. Johnson,* 185 N. Y. 219; *People v. Conklin,* 175 N. Y. 333).

WERNER, J.:

On the 22d day of April, 1909, the defendant was indicted for the crime of murder in the first degree. The indictment charged him with shooting and killing one Eugene Hutchinson on the 10th day of April, 1909, in the city and county of New York, and specified that the act was willful, felonious and premeditated. The defendant was arraigned on the 26th day of April, 1909, entered the plea of not guilty, and was remanded for trial. On the 11th day of May, 1909, he was placed on trial, at a term of the Supreme Court in which Mr. Justice FITZGERALD presided, and on the 13th of May, 1909, the jury impaneled in the case rendered a verdict of guilty as charged in the indictment. By virtue of the judgment entered upon the verdict the defendant was again arraigned on the 17th day of May, 1909, and sentenced to the penalty of death.

The evidence relied upon to support the charge is singularly simple and direct. The defendant, a negro, lived with his mistress at 414 West Thirty-ninth street in the city of New York.

Eugene Hutchinson, the deceased, also a negro, had previously boarded with this woman.   During the afternoon of April 11th, 1909, the latter went to the saloon of one Blumenstock, located on Thirty-ninth street, just west of Ninth avenue, to look for a man named Bird, whose assistance she desired in the delivery of some laundry work which she had done.   In this saloon the defendant's mistress met Hutchinson, whom she addressed, when, according to her story, he struck her on the head with such force as to draw blood and cause disfiguration of her face. Another witness attributed this violence to a man named Roland, but this divergence of testimony is immaterial, since it appears beyond doubt that the defendant was informed that his mistress had been struck by Hutchinson.   This information was conveyed to the defendant in his house, where he lay upon a couch suffering from indisposition, which may be inferred to have been caused by his over-indulgence in drink.   Having been told what had occurred at the Blumenstock saloon, he arose and remarked, " I will see about it."   He left his house, followed by his mistress, and her child in arms, and proceeded in the direction of the saloon in front of which Hutchinson stood.   There a colloquy occurred between the two men at the conclusion of which they separated.   The time is not very definitely fixed, but is said to have been between seven and eight o'clock in the evening.

At this point the chronology of events takes us to the loan office of one Weaver, located on Ninth avenue, only a few blocks distant from the scene of the tragedy.   Two negroes, not identified, appeared there between half-past seven and eight o'clock and purchased a five-chamber Hames revolver.

At about half-past eight the defendant was seen in the vicinity of the Blumenstock saloon.   He was running after another negro who was identified as Hutchinson.   The latter ran toward the easterly entrance of the saloon and, as he was about to enter, the defendant fired a shot from a revolver.   Hutchinson con-

tinued his flight through the saloon to a door further west, and during this momentary interval another shot was fired inside of the saloon. Through this door Hutchinson made his exit into the street, and he had proceeded to a point near the curb when another shot was fired by the defendant. Hutchinson plunged forward and fell headlong into the street, dying almost instantly. The defendant, still pursuing, came to the prostrate body of Hutchinson and fired another shot. Subsequent investigation disclosed that the third shot had penetrated the posterior part of Hutchinson's skull, and plowed its way into the brain in such a way as to cause practically instant death. The fourth shot entered Hutchinson's body about two inches below the top of the right shoulder and was deflected by the shoulder blade so that it lodged just underneath the skin.

A policeman named Grant, who had been attracted by the shooting, arrested the defendant, and found upon his person a five-chamber revolver with four shells emptied and one remaining loaded. This revolver was identified by two employees in Weaver's loan office as the one which had been sold to the two negroes at some time within an hour preceding the tragedy.

The foregoing outline of the facts, extracted from the detailed testimony of eleven witnesses fully set forth in the record, is sufficiently comprehensive to show that the death of Hutchinson, and his killing by the defendant, were clearly established; the former by direct evidence, and the latter beyond a reasonable doubt. The defendant did not testify in his own behalf, nor did he call any witnesses. Upon the record thus made, the learned trial court submitted the case to the jury in a charge so clear and fair to compel the approval even of defendant's counsel, and the result was, as already stated, that the defendant was convicted.

That the verdict of the jury was not only justified, but demanded by the proofs, is clear to the point of demonstration. The death of Hutchinson at the hands of the defendant was con-

9

clusively established. The attendant circumstances indicate beyond a reasonable doubt that it was not justifiable homicide; neither was it an accident or an act of sudden impulse, but a deed of premeditation and deliberation.

Nothing remains for us, therefore, but to search the record to see if it contains any errors that were substantially prejudicial to the defendant.

Two points presented by the learned counsel for the defendant will be briefly discussed. It is urged that when the defendant was arraigned for judgment he was not asked, as required by section 480 of the Code of Criminal Procedure, whether he had any legal cause to show why judgment should not be pronounced against him. The record discloses that this contention is not well founded. The minutes of the trial, which are a part of the record on this appeal, show that the command of section 480 was literally and most formally complied with. By that record we are bound, notwithstanding the contrary recollection of defendant's present counsel, who, it may be said in passing, was not of counsel engaged in the trial.

It is also contended that incompetent testimony was admitted to the prejudice of the defendant over the objection and exception of his counsel. In that connection the record discloses that when the mistress of the defendant was testifying as a witness for the People, she was asked by the district attorney if she had caused the arrest of Hutchinson previous to the altercation which ended in the tragedy resulting in this prosecution. The question was objected to and the objection sustained. This was immediately followed by the inquiry whether the defendant had ever caused the arrest of Hutchinson. That was also objected to generally, and not upon the ground that it was hearsay, or not the best evidence. The objection was overruled and no exception was taken. From the testimony adduced by that question, and others along the same line, it appeared that Hutchinson had previously lodged with the witness, presumably while

she was living with the defendant as the latter's mistress, and that trouble had arisen over the unpaid bill of Hutchinson for that lodging. The evidence was offered, as was stated by the district attorney, for the purpose of showing ill-will on the part of the defendant toward Hutchinson, and we think it was competent. The crime of murder in the first degree involves the elements of felonious intent, deliberation and premeditation, and any evidence bearing upon either or all of these elements is admissible. This rule of evidence is so elementary that, at this late day, it needs no support in the citation of authorities.

We conclude with a single observation concerning the criticisms of counsel for defendant upon this appeal, of the conduct of his counsel at the trial. While these criticisms are somewhat vague and indefinite, they seem to imply that the trial was conducted without the care and deliberation commensurate with the importance and solemnity of the issue at stake, and that the failure of counsel to call the defendant as a witness is some evidence of a neglect of professional duty. Present counsel for the defendant seems to think that more time should have been consumed in impaneling a jury and in cross-examining the witnesses for the prosecution. All that we feel called upon to say about that is, that in an age when the practice in these particulars is so much abused by over indulgence, appellate courts will be slow to criticise counsel for expedition and brevity which are usually not inconsistent with the proper administration of justice. These things should evoke commendation rather than criticism unless it affirmatively appears that a defendant's rights have been violated or ignored. Much less will such criticism be made when it appears, as in the case at bar, that both court and counsel have evinced a most intelligent, discriminating and humane regard for a defendant's interests.

The suggestion that defendant may have been prejudiced by the failure of his counsel to call upon him to testify may be disposed of in a sentence. Experience has shown that the failure

to call as a witness in his own behalf a defendant charged with crime, so far from being evidence of neglect or lack of professional skill in counsel, is usually founded upon considerations of prudence which are too obvious to require justification. The defendant was privileged to testify if he desired. It was his right to remain silent if he chose. He adopted the latter course. We are inclined to think that the exercise of this right did him no harm.

The judgment of conviction should be affirmed.

Cullen Ch. J., Gray, Edward T. Bartlett, Haight, Willard Bartlett and Hiscock, JJ., concur.

Judgment of conviction affirmed.