[No. 10154.   Department One.   June 1, 1912.]

THE STATE OF WASHINGTON, *Respondent*, v.
GEORGE ELLIOTT, *Appellant*.[1]

JURORS—EXAMINATION—CURTAILMENT.   In the examination of a juror on his *voir dire*, it is not prejudicial error for the court to curtail counsel in questions bringing out the fact that the court had criticized a jury in another case, where he was permitted to go far enough to lay the ground for a peremptory challenge if the juror had served in such case.

FALSE PRETENSES—PLEADING AND PROOF—VARIANCE.   Under an information charging the obtaining of property under false pretenses that certain securities had been executed by A., when in fact there was no such person, without alleging that the securities were false, it is not a fatal variance that the prosecuting witness testified that he had parted with his property upon his faith in the securities, where his testimony was qualified by saying that it was also upon his faith of the identity of the party who was falsely introduced to him in the fictitious name used in the execution of the papers; it not being necessary that the false representation alleged in the information be the sole inducement, nor a fatal variance that the evidence showed other concurring inducements, where the false pretense alleged was a moving inducement.

CRIMINAL LAW—EVIDENCE—OPINION EVIDENCE—IDENTIFICATION OF PERSON.   Upon the question of the identification of a person, a witness is entitled to give his opinion.

CRIMINAL LAW—APPEAL—REVIEW—HARMLESS ERROR—FALSE PRETENSES—EVIDENCE—ADMISSIBILITY.   Upon a prosecution for obtaining property upon false pretenses as to the identity of a person, it is not prejudicial error to exclude evidence of a witness as to whether he had met the person at a certain time in a certain city, in the absence of any offer to show whether the witness knew him as the party he was represented to be or whether he was generally known in that city by such name, and where the defendant had testified that he did know the man by that name in that city.

Appeal from a judgment of the superior court for King county, Gay, J., entered September 30, 1911, upon a trial and conviction of grand larceny by false pretenses.   Affirmed.

[1]Reported in 123 Pac. 1089.

*William R. Bell,* for appellant.

*John F. Murphy, Hugh M. Caldwell,* and *H. B. Butler,* for respondent.

Chadwick, J.—It is first complained that defendant was prejudiced by certain rulings of the court. While the jury was being impaneled, counsel for defendant was examining a prospective juror, and the error assigned may be best illustrated by quoting the record:

"Mr. Bell (attorney for appellant): In that case, Mr. Hilderbrand, the defendant Faletti was acquitted by the jury which tried him in this department. After the jury returned the verdict, his Honor, Judge Gay, criticized the action of the jury in acquitting that defendant and censured them for returning such a verdict. The Court: That is not true. Mr. Caldwell (attorney for respondent): Counsel was not present. The Court: Counsel was not here. There was no censure made of the jury. Mr. Bell: I submit, if your Honor please— The Court: You have got to state facts. Mr. Bell: I shall endeavor to state the facts, not as the counsel understands them. The Court: I will not permit you to sit here and say that the court did a thing the court did not do; I won't permit you nor any other man living. Mr. Bell: Here is the point exactly. I don't care to misquote your Honor, but your Honor did criticize the jury. That much is conceded. Where are you going to draw the line between criticism and censure? The Court: As a matter of fact, the court did not criticize the jury but asked the jury who had made a mistake, whether I had made a mistake or the jury had, because it seemed to me the man was guilty and I said probably no great harm had been done and yet I wondered if I had done it in the manner of proceeding and the defendant got up and finally in the talk he said that he had been taught a lesson and that he had taken the money because he was hard up and I said to the jury: 'You see, now he has confessed the crime.' That was practically the incident. The most friendly talk; there was no criticism of the jury. I had no question of the integrity or honesty of that jury, not the slightest in the world, and I think they conscientiously tried to do their duty. Mr. Bell: That may be true, if your Honor please, but your Honor placed certain

strictures from your Honor's own statement, upon the action of the jury. That is my position so far as this jury is concerned. The Court: We will have no more discussion about it. . . . Mr. Bell: You understand I assume it is the duty and province of the court to instruct you upon all questions of law but as to all questions of fact you must follow your own judgment as a juror. A. Yes, sir. Q. And you would do that, would you? A. As the facts are presented in evidence, yes, sir. Q. Even though the court in this case, to which reference has been made, the case of State vs. Faletti, expressed dissatisfaction, to use the mildest term I can— The Court: You have carried that far enough. This court is not on trial. You have carried that just far enough."

It is said that the conduct of the trial judge was such as to prejudice the rights of the appellant, and to prevent a full, fair, and complete examination of the jurors. We think counsel assumed to go further than was necessary. If he believed that the court in another case had criticized the jurors, and that they might thus be influenced in the present case, it was enough for him to ask the juror if he had served as a juror in that case, thus laying the ground for a peremptory challenge. When counsel went further and sought to put a construction upon an incident which he confessedly had not witnessed, we think the trial judge was well within bounds when he refused to allow the examination to proceed. All that we can gather from the incident is that, as it subsequently transpired, the court made a more accurate guess as to the guilt of the defendant in the other case than had the jury. The fact that he told the jury of their mistake does not indicate prejudice or passion on the part of the court towards this defendant; nor does the refusal of the court to go on trial in this case indicate a disposition to hamper or prevent the free examination of the jurors.

Defendant was charged with the crime of grand larceny. Assuming the facts found by the jury to be true, it seems that this defendant and one Joseph T. Dyer induced one George E. Johnson to part with certain property of the value of $1,800, in consideration of a personal credit sus-

tained by the possession and delivery of a note, mortgage, and an abstract of property, the mortgage covering certain property in the state of Oregon. All of these papers were in the name of John A. Arnold. The false pretense relied on is that defendant and the said Dyer pretended and represented to the said Johnson that Dyer was in fact John A. Arnold, and that Johnson, believing and relying upon such representation, parted with his property. It was proven upon the trial that Dyer was not in fact Arnold; that there was no such person so far as he knew; and that, so far as the present record goes, the papers were false and fraudulent. The point is made that the prosecuting witness parted with his property, not because of or upon the credit of the name which proved to be false, but upon the credit and faith of the note, mortgage and abstract; that their falsity is not alleged in the information, and that therefore no conviction can follow. The prosecuting witness said a number of times that he let the machine go upon the strength of his faith in the securities, but as often qualified his testimony by saying that it was also upon his faith in the identity of the party.

It is the law that the state is bound to sustain the charge as laid, and to show that the use of the false name caused and induced the prosecuting witness to part with his property. But it does not follow because, as incident to the proof of the charge, the falsity of the securities was made to appear, that the state has failed to make out its case. It appears that the prosecuting witness was introduced to defendant and Dyer by a friend or acquaintance. Dyer was introduced as Arnold. It was no doubt the purpose of defendant and his coworker to establish the name of Arnold so as to make the securities available in the trade. Without the name, the securities would have served no purpose. It was to establish a credit for the name, and to identify Dyer as a man of means and credit, that the false securities were used. The gist of the offense lies in establishing the name, and the pretenses and tokens used to establish credit for the name are

but incidents. The test in such cases is, Did the party claim credit on account of the name? or, to square it with the facts in this case, Did the parties, by assuming a false name for Dyer, sustain or create a credit by reference to false securities purporting to be the property of and drawn in the name of John A. Arnold? We believe with the jury that the prosecuting witness relied upon the name, that he believed in the person, and that he did not part with his property solely upon the faith of the securities. He took no assignment or indorsement of them; he simply held them pending the payment of the debt.

Defendant relies upon *State v. Bingham*, 51 Wash. 616, 99 Pac. 735. That case is not in point. There the party charged had an actual property in the paper and authority to indorse it. The name was immaterial. There the check was good and negotiable if indorsed in the assumed name. Here the papers were worthless in law, and could only be used by defendant and his codefendant unlawfully. Without the false assumption in respect to the name, there would have been no transfer of property and hence no crime. We think all of the contentions of the defendant in this respect are concluded by the rule laid down in *State v. Kulbe*, 67 Wash. 21, 120 Pac. 510, where it is said:

"It is unquestioned that a false representation, to be actionable, must be the effective cause inducing the complainant to part with his money or property. It does not necessarily follow that it must be the sole cause. If it be an effectual cause, it may operate with other moving causes of inducement, so long as the jury believe that the representation complained of had such an influence over the mind of the person defrauded that he would not have acted except for his reliance upon it. . . . If it operated upon her mind in 'some measure,' and induced her to act in reliance upon its truth, and because thereof she parted with her money, it was an effective cause of her act, . . ."

Nor can we agree with counsel that this rule does not apply because only one false pretense is alleged in the informa-

tion. It is enough if the one alleged operated as a moving cause. Other concurring causes may be shown in evidence, and nothing more was done in this case.

A witness was called to the stand and, upon his examination, the following colloquy between counsel and the court occurred:

"Q. (By Mr. Bell): I will ask you whether or not you know the codefendant, Joseph T. Dyer, the name he gives now. A. I was looking at that gentleman yesterday; I could not swear postively; it seems to me I have met him a few weeks when I first got to Portland in the Olympia saloon. Mr. Caldwell: The witness is guessing. The Court: Objection sustained. Q. What is your best recollection as to whether or not you met him in Portland? Mr. Caldwell: I object to that for the same reason; if the witness knows this man he can identify him. The Court: If you know him, and can identify him, identify him. Mr. Bell: I don't know whether there is any objection to that question. Q. What is your best recollection as to whether you met this man Dyer in Portland? Mr. Caldwell: I object as calling for a conclusion of the witness; not calling for an identification. The Court: Objection sustained; exception allowed. Q. Can you say from your recollection whether or not you ever met this man Dyer or Arnold in Portland? A. Well, I can't make a positive statement. I would like to make my statement right; I was looking at the gentleman, but to— The Court: When there is an objection, wait. Mr. Caldwell: The witness clearly shows he is not competent to identify this man; he can't do it; his speculation and guesses cannot be. admitted. The Court: Objection sustained. Q. Answer this question, yes or no. Can you say from your recollection whether you met this man Dyer or Arnold in Portland? Mr. Caldwell: Objected to as having already been answered in the negative. The Court: Objection sustained; exception allowed. Mr. Caldwell: Just an attempt to evade the ruling of the court. Mr. Bell: We will show by this witness— Mr. Caldwell: Just a minute— The Court: A man who testified in such a manner, if he testifies falsely, he should be called to answer; when he gives opinions there is never any way to call him to answer in the world on a matter that becomes vital like this, the court should not permit him to give an opinion."

To use the language of Judge Stiles, in the case of *State v. White,* 10 Wash. 611, 39 Pac. 160, 41 Pac. 442, "it is difficult to see what this was all about." We have quoted enough to show that the question was proper, and that the subsequent colloquy was wholly without reason. For after all, in its last analysis, identification of men or things is a matter of opinion. The witness may state his belief. Its worth is for the jury. *State v. Murphy,* 15 Wash. 98, 45 Pac. 729.

But it does not follow that the error calls for reversal. The witness' answer, that it seemed to him that he met Dyer or Arnold in Portland, stood, and whether he knew Dyer or Arnold could only be material if it was shown defendant knew him or that he was generally known in Portland by that name, thus sustaining the conclusion that defendant honestly relied upon his belief that Dyer's name was Arnold and introduced him as such, and upon such faith defendant participated in the trade. This counsel did not offer to prove by the witness. Furthermore, defendant testified that he did know Dyer as Arnold in Portland; so that, in the absence of an offer to prove defendant's knowledge of the name, or that Dyer had gone by the name, we must hold that defendant was not prejudiced.

Errors are assigned upon the instructions of the court, but we think the contentions made in this behalf have been fully met by what has gone before. Judgment affirmed.

DUNBAR, C. J., GOSE, PARKER, and CROW, JJ., concur.