[No. 28075. *En Banc.* December 30, 1940.]

THE STATE OF WASHINGTON, *Respondent,* v. DENZEL DAVIS, *Appellant.*[1]

[1]Reported in 108 P. (2d) 641.

*Jacob Kalina,* for appellant.

*B. Gray Warner, Charles C. Ralls,* and *John A. Burns,* for respondent.

BEALS, J.—For some time prior to the month of March, 1940, Denzel Davis had been living with his mother, Harriet Redding, in her home on Stone avenue, just north of the limits of the city of Seattle. He was married, but for two months or so had been separated from his wife, and was living with his mother, who supported him. Davis was not employed, and had no income save what his mother gave him. Mrs. Redding was employed at a department store in Seattle, and supplemented her income by dressmaking.

In 1931, Davis, because of minor offenses, including petty thieving, was sent to an institution for delinquent boys. Later, he enlisted in the army, and deserted. It is evident that Davis and his mother had several arguments over money and concerning Denzel's wife, of whom Mrs. Redding disapproved, in the course of which arguments Davis used extremely bad language, his attitude causing his mother much sorrow.

March 1, 1940, Davis induced a merchant to cash a check for twenty dollars, to which he had forged his

mother's name. Mrs. Redding later made this check good, but told her son that she would not again help him out of such a situation.

The evening of Sunday, March 17th, Davis and his mother had some disagreement, which continued over until Monday morning, when the argument was continued. In the course of the dispute, Davis picked up a hammer and struck his mother a hard blow on the back of her head. Mrs. Redding fell on her back, groaning. Davis then picked up an ice pick and stabbed her. Mrs. Redding continued groaning, and Davis stabbed her seventeen times with the ice pick. Mrs. Redding continued to groan, and Davis tied two wire cords and a chain around her neck. He then placed his mother in a recess under a drain board, nailing the door shut. He then, with his shirt, cleaned up the blood from the floor, putting the garment in the soiled clothes basket in the bedroom closet. He left the apartment, after taking what money he found in his mother's purse, together with her watch and a ring which he took from her finger. He went down town and joined his wife at the quarters she was occupying.

During the day, he pawned his mother's ring with one pawnbroker, and her watch with another. During the afternoon, Davis and his wife engaged a room at a down-town hotel, and later went to a theater and visited a beer parlor. On Tuesday, he told his wife that he had killed his mother, and that he would surrender himself to the police. By this time, the murder had been discovered, and Davis knew that he was wanted as a suspect. Instead of surrendering himself, he slept Tuesday night in a basement in a vacant house. Wednesday morning, he secreted himself in the basement of a house next door, where he remained until Saturday morning, when he went upstairs to the

room of a friend, who was then absent. While there, hearing footsteps approaching, he hid in a closet, where he was found by deputy sheriffs who were searching for him. Davis was taken to the sheriff's office, where he made a full confession.

An information was filed, charging Denzel Davis, alias W. A. Redding, with murder in the first degree, and, when arraigned, Davis entered a plea of guilty. The court appointed counsel for Davis, he having none, and his counsel, on Davis' behalf, entered a plea of not guilty by reason of insanity and mental irresponsibility. It was also stated in the plea that the insanity and mental irresponsibility still existed. A trial was necessary under Rem. Rev. Stat., § 2116 [P. C. § 9169], which reads as follows:

"If, on the arraignment of any person, he shall plead guilty, if the offense charged be not murder, the court shall, in its discretion, hear testimony, and determine the amount and kind of punishment to be inflicted; but if the defendant plead guilty to a charge of murder, a jury shall be impaneled to hear testimony, and determine the degree of murder and the punishment therefor."

The case was called for trial May 6th, and during argument between counsel, Davis again stated that he was guilty of the charge. Davis was put on trial before a jury upon his own plea of guilty and upon the plea of insanity interposed by his counsel. The jury returned a verdict of guilty of murder in the first degree, recommending that the death sentence be imposed. From a judgment of guilty and a sentence of death, an appeal has been taken to this court.

Error is assigned upon a portion of the opening statement of the prosecuting attorney to the effect that appellant had forged his mother's name to a check, appellant also assigning error upon the admission, over his objection, of testimony concerning this mat-

ter. Appellant also complains of the refusal of the trial court to admit in evidence, on appellant's offer, a written report made by an alienist who testified for the state, appellant having sought to introduce the report. Error is also assigned upon the denial by the trial court of appellant's motion, made at the conclusion of the state's case, to reduce the charge from first to second degree murder. Appellant also assigns error upon the giving of two instructions, to which he excepted, and upon the court's refusal to give several instructions which appellant requested. Finally, appellant assigns error upon the denial of his motions for a new trial and for arrest of judgment.

In his opening argument, the attorney for the state told the jury that appellant had forged his mother's name to a check and cashed the same, to which statement appellant excepted. In the course of the state's case, evidence was offered concerning this matter, which evidence was admitted over appellant's objections. The testimony was to the effect that, March 1st, appellant had signed his mother's name to a check for twenty dollars; that appellant had cashed the check with a neighboring merchant; and that his mother had later repaid the merchant and taken up the check. Appellant argues that this evidence was erroneously admitted over his objection, as constituting evidence of a separate crime having no bearing upon the murder charge. Appellant's assignments of error based upon the prosecuting attorney's opening statement, and the claim of error in permitting, over appellant's objection, the introduction of evidence concerning the check, will be discussed together. If the evidence was properly admitted, it was right for the attorney for the state to refer to the matter in his opening statement. In this connection, appellant cites several of our decisions.

In the case of *State v. O'Donnell*, 191 Wash. 511, 71 P. (2d) 571, the attorney for the state told the jury that the evidence would show that the defendants had previously been convicted of burglary and robbery. From the statement made, it appeared that the prior convictions of the defendants were for offenses nowise connected with the pending charge. The statement was held reversible error.

In the case of *State v. Barton*, 198 Wash. 268, 88 P. (2d) 385, this court approved the general rule that, in a criminal trial, evidence of other crimes should not be admitted as part of the state's case in chief; and in the case of *State v. Devlin*, 145 Wash. 44, 258 Pac. 826, the admission of testimony that the defendant's picture was in the "rogues' gallery" was held erroneous.

■ In the case at bar, it was necessary that a trial be had, notwithstanding appellant's plea of guilty, in order that the degree of murder might be determined by a jury. Appellant had made a confession, and had pleaded guilty, but the state was bound by neither, nor limited in the method of proving its case. *Maddox v. State*, 108 Neb. 809, 189 N. W. 398; *People v. Parisi*, 190 Cal. 542, 213 Pac. 968; *Reeves v. State*, 116 Tex. Crim. App. 451, 32 S. W. (2d) 471; *Curtis v. State*, 119 Tex. Crim. App. 398, 46 S. W. (2d) 303.

■ In making its case, the state was entitled to introduce any evidence which was competent, relevant, and material to the issue to be determined by the jury. That a portion of the evidence so offered might incidentally tend to show that appellant had been guilty of some other and separate offense, is unimportant if the evidence tended to support the state's contention in the case being tried, and was admissible under the general rules of evidence. *State v. Thuna*, 59 Wash.

689, 109 Pac. 331, 111 Pac. 768; *State v. Macleod,* 78 Wash. 175, 138 Pac. 648.

In the case of *State v. Gottfreedson,* 24 Wash. 398, 64 Pac. 523, this court said:

"The general rule is well established that proof of the commission of a separate and distinct crime will not be admitted for the purpose of aiding the conviction of defendant for the crime charged. There are exceptions, however, to this general rule, as where the testimony shows a connection between the transaction under investigation and some other transaction, and where they are so interwoven that the omission of the testimony in relation to the other crime would detract something from the testimony which the state would have a right to introduce as tending to show the commission of the crime charged by the defendant, . . . or where the testimony tending to show the commission of one crime tends to prove a condition of mind which must necessarily be entertained by the defendant in the commission of the crime charged."

The matter of this check had been the subject of discussion between Davis and his mother as recently as a week prior to March 18th, and on that morning Davis still had in his possession a dollar or so of the money which he realized from the check.

In murder cases, evidence of previous disputes or quarrels between the accused and the deceased is generally admissible, particularly where the existence of malice or premeditation at the time of the homicide is in issue. *State v. Churchill,* 52 Wash. 210, 100 Pac. 309; *State v. Hoyer,* 105 Wash. 160, 177 Pac. 683; *State v. Clark,* 119 La. 733, 44 So. 449; *White v. State,* 30 Tex. Crim. App. 652, 18 S. W. 462. Such evidence tends to show the relationship of the parties and their feelings one toward the other, and often bears directly upon the state of mind of the accused with consequent bearing upon the question of malice and premeditation.

*Commonwealth v. Russ,* 232 Mass. 58, 122 N. E. 176; *Commonwealth v. Retkovitz,* 222 Mass. 245, 110 N. E. 293; *People v. Bowser,* 196 N. Y. 296, 89 N. E. 818.

■ In the case at bar, in order to establish the charge laid in the information of murder in the first degree, proof of deliberation or premeditation was necessary. In its attempt to prove this, the state was entitled to present to the jury a complete picture of all relevant surrounding circumstances, present and antecedent. The jury was entitled to consider all physical circumstances of the killing, in the light of the background of the relationship of the parties and transactions between them. *State v. Spadoni,* 137 Wash. 684, 243 Pac. 854.

■ This court has held that the premeditation required in order to support a conviction of the crime of murder in the first degree may involve no more than a moment in point of time. *State v. Rutten,* 13 Wash. 203, 43 Pac. 30; *State v. Arata,* 56 Wash. 185, 105 Pac. 227; *State v. Duncan,* 101 Wash. 542, 172 Pac. 915. In determining whether or not premeditation was present in the case at bar, the relationship of the mother and son for at least several weeks prior to the homicide could be shown to the jury by competent evidence. In this connection, the opinion of this court in the case of *State v. Gaines,* 144 Wash. 446, 258 Pac. 508, is of interest.

■ In the case at bar, Davis' act in signing his mother's name to the check, without authority, properly constituted part of the state's case as showing the relations between appellant and his mother shortly prior to the killing, the evidence showing that his mother had told appellant that she would not again help him out of any such difficulty.

We find no error in connection with this matter.

■■ Dr. N. K. Rickles, called as a witness for the

state, testifying as an expert alienist, stated that he had examined appellant while the latter was in jail, and that, in the opinion of the witness, the appellant was sane, both at the time of the killing and at the time of the trial. The witness had made a written report of his examination and conclusions, which report had been delivered to the prosecuting attorney. It appears that, in this report, the witness had stated that, in his opinion, the killing was not premeditated. Appellant offered this report in evidence, and attempted to prove by the witness that, in his opinion, the killing was not premeditated. On the state's objection, the court refused to admit the report in evidence, and sustained objections to questions concerning this matter which were propounded to the witness by appellant's counsel. The witness did not, on direct examination, refer to the report mentioned. That matter was first brought out on cross-examination.

Upon the record, the matter was not a proper subject of cross-examination, as the testimony of the witness upon his examination in chief was limited to the matter of the sanity or insanity of appellant at the time of the killing and at the time of the trial. There was nothing in the report which tended to impeach the testimony of the witness upon his examination in chief. The witness, of course, had no personal knowledge concerning the facts of the case, and his opinion on the question of premeditation or the lack of premeditation was inadmissible. The witness was examined and cross-examined at length as to appellant's mental condition, which was a proper subject for expert testimony, upon which the witness was competent to testify. The opinion of the witness, however, upon the presence or lack of premeditation, as stated on some other occasion, was not admissible on appellant's trial. The written report made by the witness prior

to the trial was properly excluded on the state's objection. No error was committed by the trial court in this connection.

■ Appellant next assigns error upon the giving of the following instruction:

"Every condition of mental irresponsibility or of insanity will not excuse a crime.

"If the defendant is to be acquitted upon his plea of mental irresponsibility or insanity, he must convince you by a preponderance of the evidence, that at the time the crime is alleged to have been committed, his mind was diseased to such an extent that he was unable to perceive the moral qualities of the act with which he is charged, and was unable to tell right from wrong with reference to the particular act charged. Any person may be sick or diseased in body or mind and yet be able to distinguish right from wrong with respect to a particular act."

Appellant excepted to this instruction, and argues that the court erred in telling the jury that the jury must be convinced that appellant "was unable to perceive the moral qualities of" his act, contending that the placing upon appellant of the burden of proving that he was unable to perceive the moral quality of his act increased beyond legal limits the burden which rested upon appellant. The instruction placed no undue burden upon appellant, and could not have confused the jury. While the instruction might have been more happily worded, we find therein no reversible error.

■ Appellant also complains of an instruction in which the jury were told that "certain evidence" had been admitted under the limitation that it should be considered by the jury only in determining the mental condition of appellant at the time of the killing, the jury having been told in the same instruction that the testimony should not be considered as an excuse for

the crime nor to prove justification for anger, hatred, revenge, etc. Appellant complains of the instruction, contending that the court did not point out to the jury the particular testimony referred to. Three witnesses called by appellant testified as to his mental condition, stating that, in their opinion, appellant was insane. One of the witnesses was an expert alienist, another was appellant's wife, and another an acquaintance.

We find no error in the instruction complained of. It is impossible to imagine that the jury could have been confused thereby. By its language, the instruction referred to evidence concerning the question of appellant's mental condition at the time of the acts described in the information.

Appellant next contends that the trial court erred in refusing, at his request, to instruct the jury that the charge against appellant was a mere formal accusation, was not evidence of his guilt, and that no juror should be influenced because appellant had been charged with the crime. The trial court instructed the jury as to the presumption of innocence and concerning the burden of proof. Upon the record, we find no merit in this assignment of error.

Appellant next assigns error upon the refusal of the trial court to instruct the jury that, if the killing was admitted, it would be presumed that the crime, if any crime had been committed by appellant, was that of murder in the second degree.

In the case of *State v. Payne,* 10 Wash. 545, 39 Pac. 157, the defendant was tried upon an information charging him with murder in the first degree. The jury returned a verdict of guilty of manslaughter, and from a judgment and sentence upon the verdict, defendant appealed. The trial court had instructed the jury that, the homicide having been proved, the pre-

sumption was that it was murder in the second degree. In the course of the opinion, this court said:

"The proper instruction is that the presumption will have force unless there is something in the case to rebut it. Such was the instruction under consideration, and the better line of reasoning sustains it. Instructions like this are also sustained by the weight of authority."

The same rule was approved in the cases of *State v. White,* 10 Wash. 611, 39 Pac. 160, 41 Pac. 442; *State v. Clark,* 58 Wash. 128, 107 Pac. 1047; and *State v. Duncan,* 101 Wash. 542, 172 Pac. 915.

In the late case of *State v. Gallagher,* 4 Wn. (2d) 437, 103 P. (2d) 1100, we said:

"Where the killing of a human being is admitted, the killing is presumed to constitute the crime of murder in the second degree. The burden is imposed on the state to raise the charge to murder in the first degree. The defendant has the burden of justifying his act or reducing the charge to manslaughter."

The general rule is as contended for by appellant. The only question to be determined is whether or not, under the facts in the case at bar, the general rule applies, appellant having pleaded guilty to the charge of murder in the first degree. In all the cases cited, pleas of not guilty had been entered.

The case at bar went to the jury upon appellant's plea of guilty to the charge of first degree murder, and upon the plea interposed on appellant's behalf by his counsel, of not guilty by reason of insanity. Under the law, when appellant was found guilty, it became the duty of the jury to determine the degree of the crime. The court instructed the jury concerning the crimes of murder in the first degree and murder in the second degree, giving the jury the opportunity to find appellant guilty of either, in case they rejected the plea of not guilty because of insanity. The court instructed

the jury concerning the elements of the crime of murder in the first degree, and told the jury that the burden rested upon the state to prove beyond a reasonable doubt all of the elements of that crime.

The state makes a forceful argument that, on the record, the court erred in instructing the jury that they might find appellant guilty of murder in the second degree, and that, under the rule laid down in the cases of *State v. Gottstein,* 111 Wash. 600, 191 Pac. 766, and *State v. Mahoney,* 120 Wash. 633, 208 Pac. 37, appellant was guilty of murder in the first degree, if guilty of any crime at all. It is not necessary to consider this question.

In all the cases relied upon by appellant, the defendants, having pleaded not guilty, objected to the giving of the instruction, contending that it placed upon them an undue burden. In the case of *State v. Mahoney, supra,* this court found no error in the failure of the trial court to instruct the jury concerning the offense of murder in the second degree, being of the opinion that, in order to find the defendant guilty at all, the jury must have accepted evidence which in itself showed premeditation.

In the case at bar, the jury rejected the plea of not guilty by reason of insanity, and no question upon that phase of the case is before us.

In the case of *State v. Payne, supra,* this court made a careful study of the history of and reasons for the doctrine that the jury should be instructed that, a homicide having been proved, it should be presumed that it constituted murder in the second degree. After stating the old common law rule that, a killing having been shown, it would be presumed that murder had been committed, the court continued by showing the distinction between the degrees of the crime of murder, and that the presence of premeditation, which is re-

quired to constitute the crime of murder in the first degree, is a distinct element, having no relation whatever to the fact of the killing, and that, for this reason, no presumption that the crime is murder in the first degree flows from proof of a homicide, while as to murder in the second degree, the reasons upon which the common law rule was based still have force. The court continued:

"Every one is presumed to intend the natural and necessary results of his actions. If he kills another he must, in the absence of a showing to the contrary, be presumed to have intended to kill him. And while it is true that even although he did intend to kill he may not be guilty of murder, or of any other crime, yet if he is not, it is by reason of some fact in justification of his action, the burden of proving which public policy demands should be cast upon him. If it is held that the fact of killing does not raise the presumption that it was malicious, the administration of criminal justice will be greatly interfered with. It is therefore the duty of courts to hold otherwise, if due care for the rights of the defendant will allow. Without such presumption to aid the prosecution it might happen that two persons would be alone in a room, and one kill the other, without any justification whatever, and yet the prosecution be utterly unable to secure his conviction, for the reason that there was nothing to show the circumstances surrounding the killing. Hence no presumption that it was other than justifiable could be established."

The rule was originally adopted of necessity, to assist the state in establishing a connected and complete *prima facie* case. The presumption, unlike the statutory presumption of innocence, is not one established for the benefit and protection of a person charged with the commission of a crime.

Appellant was charged with the crime of murder in the first degree, to which he pleaded guilty. Under the law above quoted, a jury was impaneled to hear

testimony and to "determine the degree of murder." While the defendant did not take the stand, his counsel called witnesses whose evidence tended to support the plea of insanity interposed by appellant's counsel.

The court instructed the jury that it was their duty under the law to determine whether the defendant was guilty of murder in the first degree or murder in the second degree, then gave an instruction defining both crimes, followed by an instruction concerning premeditation. By this instruction, the court told the jury that, before they could find appellant guilty of murder in the first degree,

" . . . the state must convince you beyond a reasonable doubt of all the following elements of that crime:

"(1) That the defendant, on or about the 18th day of March, 1940, did beat, stab, strangle and wound one Harriet Redding with certain deadly weapons, to-wit: a hammer, ice-pick, cord and chain;

"(2) That the defendant did this act with a premeditated design to effect the death of said Harriet Redding;

"(3) That as a result of the said wounds so inflicted the said Harriet Redding then and there died;

"(4) That the said act on the part of the defendant occurred in King county, Washington."

The court then instructed the jury concerning murder in the second degree, as follows:

"The killing of a human being, unless it is excusable or justifiable, committed with a design to effect the death of the person killed, but without premeditation, is murder in the second degree.

"The intentional killing of a human being resulting from sudden heat or passion, excitement, hatred or fear, is murder in the second degree."

After instructing the jury in connection with the matter of the plea of insanity, the court gave the usual instruction on the presumption of innocence, and finally

instructed the jury as to the forms of verdict which they should take with them to the jury room.

Aside from questions raised by the plea of insanity, which plea the jury rejected, upon appellant's plea of guilty to the charge of murder in the first degree, upon the evidence introduced, the jury could only find appellant guilty of murder either in the first degree or the second degree. The jury was properly instructed concerning the elements of these two offenses, and that, before they could find appellant guilty of murder in the first degree, the state must have convinced them beyond a reasonable doubt of the presence of each of the elements of that crime. The jury was properly instructed as to the definition of the crime of murder in the second degree. They were instructed as to the presumption of innocence.

Under the peculiar circumstances of this case, in view of appellant's plea of guilty, the trial court did not err in refusing to instruct the jury, as requested by appellant's counsel, concerning the presumption that, a homicide having been proven, the killing constituted murder in the second degree. There was no place in appellant's trial for the application of that presumption. The jury were properly and completely instructed as to their duties, and no right of appellant was violated.

Appellant assigns error upon the refusal of the trial court to instruct the jury directly that, although appellant admitted the killing, he should nevertheless be presumed innocent of any crime until his guilt was established beyond a reasonable doubt. Appellant requested an instruction to this effect, which the court refused to give. By an instruction which the court gave, the jury were advised as to the presumption of innocence, and were told that this presumption "continues throughout the entire trial and until you

have found that this presumption has been overcome by the evidence beyond a reasonable doubt." The giving of this instruction was all that appellant could possibly ask. We find no merit in this assignment of error.

Appellant next argues that the trial court committed reversible error in refusing to give appellant's requested instruction No. 9, referring to the duty of the jury to find appellant not guilty if, from the facts, and under the court's instructions, the jury determined that he was insane at the time of the commission of the homicide. In this connection, it should be noted that the instructions given by the court are subject to some criticism as not being as explicit or definite as they should have been, but from the instructions considered as a whole there can be no possible question but that the jury were informed that, if they found that, at the time of the homicide, appellant was insane, they should bring in a verdict of not guilty by reason of mental irresponsibility. It appears from the instructions that a form of verdict was submitted to the jury for use in the event they made such a finding. By another instruction, the jury were told of the special plea of insanity or mental irresponsibility; and in another instruction, the jury were advised that, if appellant was to be acquitted upon the plea of insanity, the jury must be convinced, by a preponderance of the evidence, that, at the time of the alleged homicide, he was mentally irresponsible, as defined by the court in the instruction.

The instruction which appellant requested embodied an incorrect statement of law, on a collateral matter, and the court would have erred in using it as an instruction to the jury. In failing to give the requested instruction, the trial court did not err.

Appellant also contends that the trial court

erred in refusing to give his requested instruction No. 7, as follows:

"You are instructed that if you believe either that the defendant was insane at the time of the commission of the act alleged in the information, or that he is insane during the trial of this action, then your verdict will be 'Not guilty on account of insanity.'"

This instruction was properly refused. If one accused of crime and put on his trial be insane at the time of trial, his constitutional rights are violated, as an insane person is not capable of defending himself, and if found guilty and the sentence executed, he would be deprived of life or liberty without due process of law. *State ex rel. Mackintosh v. Superior Court,* 45 Wash. 248, 88 Pac. 207; *State v. Wilson,* 69 Wash. 235, 124 Pac. 1125; *State v. Henke,* 196 Wash. 185, 82 P. (2d) 544. While an insane person should not be put upon trial for an alleged offense, if he be tried, a finding by the jury, if the procedure followed allowed such a finding, that he was insane at the time of trial, would not mean that he was not guilty of the crime with which he was charged. Such insanity means no more than that the one accused may not be tried while mentally irresponsible. If reason is regained, the person charged may subsequently be tried.

We are not aware of any statute which requires the jury to pass specifically on the question of an accused's sanity at the time of trial, if the jury returns a verdict of guilty as charged. Rem. Rev. Stat., § 2175 [P. C. § 9295], requires a special finding by the jury in cases where a plea of insanity or mental irresponsibility has been interposed, and when the jury is returning a verdict of acquittal on that plea, but this section has no application when the jury returns a verdict of guilty as charged. A superior court possesses inherent authority to ascertain whether or not one accused of crime

and put on his trial is sane or insane at the time of trial. *State v. Schrader,* 135 Wash. 650, 238 Pac. 617, 243 Pac. 10. This power rests in the sound discretion of the trial court, and may be exercised at any time the court deems such an investigation appropriate.

In the case at bar, the judge presiding at appellant's trial necessarily had appellant under personal observation for several days, and evidently found no reason for causing any investigation to be made concerning appellant's then mental condition as distinguished from appellant's mental condition at the time of the homicide. The record contains no evidence indicating that appellant's mental state at the time of trial differed from his condition at the time of the commission of the crime to which he had pleaded guilty.

The trial court therefore did not err in submitting to the jury a special finding as to appellant's sanity or insanity at the time of trial, not to be answered by the jury in case they found appellant guilty as charged. This question has been determined against appellant's contention in *State v. Henke, supra.*

██ Appellant's present mental condition as to sanity or insanity is not presented on this appeal. Of course a person found guilty of the crime of first degree murder and sentenced to death should not suffer that penalty while insane. Courts possess an inherent power to act upon a showing of supervening insanity, and if necessary, to issue a stay of execution to permit a proper and adequate investigation to be made. Our courts possess this power, independent of any statutory authority. *State v. Nordstrom,* 21 Wash. 403, 58 Pac. 248, 53 L. R. A. 584; *Grossi v. Long,* 136 Wash. 133, 238 Pac. 983; *State ex rel. Alfani v. Superior Court,* 139 Wash. 125, 245 Pac. 929, 49 A. L. R. 801. By Rem. Rev. Stat., § 6942 [P. C. § 2832], the governor of the state is vested with discretionary power to act in case of the

insanity of any person confined under sentence after conviction of crime.

 Finally, appellant contends that the trial court erred in refusing to withdraw from the jury the charge of murder in the first degree, appellant contending that the record shows no sufficient evidence of premeditation. This question has already been discussed in this opinion, and authorities cited. It is the law that the premeditated intent to kill may be formed in a very short interval before the actual killing. The law does not attempt to lay down any rule establishing a definite minimum period of time during which the premeditated intention to kill must exist. It is for the jury to determine whether premeditation did, in fact, exist prior to the homicide. In the case at bar, the history of the homicide, as shown by the record, afforded ample basis for a finding by the jury, beyond a reasonable doubt, that the killing was premeditated, and constituted murder in the first degree.

Appellant presents no arguments in support of his contention that the trial court erred in failing to grant his motion for arrest of judgment or his motion for new trial, save in connection with his contentions which we have already discussed.

Appellant had a fair trial, and the record is free from reversible error. The judgment appealed from is accordingly affirmed.

MAIN, MILLARD, STEINERT, ROBINSON, SIMPSON, JEFFERS, and DRIVER, JJ., concur.

BLAKE, C. J. (dissenting)—A homicide having been admitted or proven beyond a reasonable doubt, the presumption is that it is murder in the second degree. The presumption will prevail if there is nothing in the case to rebut it. *State v. Payne*, 10 Wash. 545, 39 Pac. 157. If defendant would reduce the crime to man-

slaughter, the burden is on him to rebut the presumption. If the state would elevate the crime to murder in the first degree, the burden is upon it to establish the essential characteristics of that crime and the jury should be so instructed. *State v. White,* 10 Wash. 611, 39 Pac. 160, 41 Pac. 442; *State v. Melvern,* 32 Wash. 7, 72 Pac. 489; *State v. Clark,* 58 Wash. 128, 107 Pac. 1047; *State v. Totten,* 67 Wash. 192, 121 Pac. 70; *State v. Duncan,* 101 Wash. 542, 172 Pac. 915; *State v. Gallagher,* 4 Wn. (2d) 437, 103 P. (2d) 1100.

I dissent.

[1]Reported in 108 P. (2d) 657.