[No. 19200.    Department Two.    September 11, 1925.]

GUIDO GROSSI, *by his next friend, Oscar R. Balducci, Respondent, v.* CLARENCE E. LONG, *as Warden of the State Penitentiary, Appellant.*[1]

APPEAL (102)—RIGHT TO APPEAL—MOOT QUESTION—CESSATION OF CONTROVERSY—STAY OF EXECUTION IN CRIMINAL CASE. The review of an order restraining the execution of a death sentence becomes a moot question, where the time fixed for the execution had passed before the hearing of the appeal.

CRIMINAL LAW (369)—INSANITY AFTER CONVICTION—JUDGMENT—CONCLUSIVENESS. An order adjudging that an accused, sentenced to be hanged, was insane at the time of the hearing, with no apparent possibility of recovery before the date of the execution, is not *res judicata* preventing the fixing of a subsequent date, should he recover his sanity.

SAME (369, 379)—INSANITY AFTER CONVICTION—STAY OF SENTENCE OR EXECUTION—COURTS—JURISDICTION. The courts have inherent power to grant a stay of execution where a prisoner has become insane between the time of his conviction for a capital crime and the time appointed for his execution.

[1]Reported in 238 Pac. 983.

Appeal from an order of the superior court for Walla Walla county, Mills, J., entered February 26, 1925, staying execution of a death warrant, after finding the accused insane. Affirmed.

*The Attorney General* and *E. W. Anderson, Assistant,* for appellant.

*Herbert C. Bryson, Peters & Buty,* and *Harry Ellsworth Foster,* for respondent.

FULLERTON, J.—On November 10, 1923, in Grays Harbor county, Guido Grossi shot and killed one Giuseppe Tolomei. He was charged with murder in the first degree, to which charge he entered a plea of not guilty by reason of insanity. On a trial before a jury, he was convicted of the crime and sentenced to be hanged. From the judgment of conviction he appealed to this court, wherein the judgment was affirmed. *State v. Grossi,* 131 Wash. 260, 230 Pac. 164. On the return of the remittitur from this court, the trial court issued a death warrant directing that the sentence be carried into execution by the warden of the state penitentiary at Walla Walla, on Friday, February 13, 1925. On February 12, 1925, the spiritual advisor of Grossi, acting as his next friend, petitioned the superior court of Walla Walla county for a writ of habeas corpus, averring in the petition that Grossi was insane, and incapable of understanding his situation or understanding that he was about to face execution for the crime of which he was convicted. In the prayer of the petition, he asked that his sanity be inquired into, and that, if he be found insane, his execution be suspended until he was restored to his reason. The court issued a writ directed to the warden of the penitentiary, causing Grossi to be brought before it. It then appointed a commission of six physicians to

inquire into his sanity and report their conclusions to the court. The physicians appointed acted, and unanimously reported to the court that the accused was insane. The court thereupon found him to be insane, and entered an order restraining the warden of the penitentiary from carrying into execution the death warrant; further ordering,

"That Guido Grossi be and he hereby is remanded to the custody of said Clarence E. Long, as Superintendent of said Penitentiary to safely keep and hold said Guido Grossi until such time as said Guido Grossi shall have become sane or until such time as the Superior court of Grays Harbor County, Washington, shall otherwise order, and without prejudice to a rehearing in any court of competent jurisdiction of the question of the present sanity or insanity of said Guido Grossi."

The cause is before us on the appeal of the warden. It is his contention, made in his behalf by the *Attorney General,* that the superior court of Walla Walla county was without jurisdiction over the subject-matter of the inquiry, and hence its order is a nullity. But, notwithstanding the very able argument of the *Attorney General* to the contrary, we cannot conclude that it would be of any avail to determine the question. The question is in a sense moot. The warden has obeyed the order as if it were a valid order. The time fixed for carrying into effect the execution of the death sentence has passed, and before it can be carried into execution another order to that effect must be obtained from the court pronouncing the sentence. Rem. Comp. Stat., § 2222. It is apparent, therefore, that the subsequent procedure on the part of the state must be the same whether the order be affirmed or be reversed; the state must, in either event, apply to the court having

authority to issue a warrant of execution for such an order.

It may be proper here to state that we cannot share in the fears of the *Attorney General* that the order of the superior court of Walla Walla county may be *res judicata* as to a subsequent inquiry into the sanity of the accused. The verdict and judgment of the court in which he was convicted is conclusive of the question of his sanity at the time of the commission of the crime, and the utmost effect of the present order is to find that he was insane at the time of the inquiry and that there was no apparent possibility of his recovery before the date fixed for executing the death warrant. The order itself carefully protects the subsequent rights of the state. It directs the warden to hold the accused until such time as the superior court in which he was convicted shall order otherwise. The state, therefore, is at liberty, at any time it may choose, to cause the accused to be brought before that court and have his sanity inquired into, and, if he is then found sane, and found to be sane at the time of his trial, have another day appointed for carrying his sentence into effect.

Passing the question of jurisdiction, we see no cause for a reversal of the order. From early times it has been the practice of the English courts, in instances where a prisoner has become insane between the time of his conviction for a capital crime and the time appointed for his execution, to stay the execution until sanity is restored. 4 Blackstone 24-25. The American courts have generally conceded the principle, resting it on the inherent power of the courts. It may be that the power is usually exercised by the court in which the conviction was had, and it may be that were the question before us in such a manner that our judgment

would conclude the particular case, we would so determine. But, as we have pointed out, the mischief in this instance, if jurisdiction was wrongfully exercised, is beyond correction.

Some question is made as to the proper construction of the statutes, but we think that we need not review them. They seem to be in utter confusion, but we find in them nothing which seems to interfere with the power of the courts to grant a stay of execution where conditions arise such as are presented in the case before us.

The order will be affirmed.

TOLMAN, C. J., HOLCOMB, MITCHELL, and MACKINTOSH, JJ., concur.