STATE ex rel. JOHNSON, Dist. Atty., et al. v.
ALEXANDER et al.

No. 5706. Decided September 6, 1935. (49 P. [2d] 408.)

Rehearing Denied September 27, 1935.

*Wade M. Johnson,* of Ogden, for plaintiffs.

*Arthur Woolley* and *John C. Davis,* both of Ogden, and *D. A. Skeen,* of Salt Lake City, for defendants.

FOLLAND, Justice.

The purpose of this proceeding is to test the jurisdiction of the Third judicial district court in and for Salt Lake county to conduct an inquisition into the sanity of Delbert Green, an inmate of the Utah state prison located in Salt Lake county, under sentence of death from the district court of the Second judicial district in and for Davis county, and to suspend execution of the warrant of death pending such investigation. The petition for writ of prohibition shows that Delbert Green had theretofore been convicted of murder in the first degree and sentenced to death by the Honorable E. E. Pratt, one of the judges of the district court of Davis county. Thereafter an appeal was taken to this court and judgment of death was duly stayed pending such appeal. After remittitur had issued out of this court affirming the judgment, an order was duly made and entered by the district court of Davis county fixing June 26, 1935, as the time for the execution of the judgment, and a warrant of death was duly issued to the sheriff of Davis county directing him as sheriff, or his deputy or deputies, to execute such warrant of death on the 26th day of June, 1935. On June 24, 1935, Lillie May Alexander (the mother of Delbert Green) filed in the district court of Salt Lake

county a complaint alleging that Delbert Green is now insane and praying that court to fix a time for an examination into the sanity of said Green, to determine and adjudge him to be insane, to order him committed to the state hospital, and to order that all proceedings against said Delbert Green be suspended except the proceeding for the determination of his sanity. That thereupon Hon. Herbert M. Schiller, one of the judges of the Third judicial district court in and for Salt Lake county, made and entered an order suspending the judgment of death, restraining the warden of the state prison of Utah from permitting said judgment to be executed, ordering and requiring the applicant, Joseph Holbrook, as sheriff of Davis county, not to execute the said Delbert Green and not to suffer or permit the judgment to be executed during the pendency of said proceedings and until the further order of said court and until the said Delbert Green shall have become sane, if he be adjudged insane in said proceedings. He also made an order fixing a date for a hearing on the sanity of Delbert Green. The petition further recited that the Governor of the State of Utah on June 25, 1935, by virtue of the power vested in him by law, had suspended the execution of the judgment of death until the next meeting of the board of pardons. On presentation of the petition to this court, an alternative writ of prohibition was issued restraining the defendants from proceeding with the insanity inquisition and to show cause why the writ should not be made permanent. The defendant district judge filed a demurrer to the petition and motion to quash the alternative writ. The defendant Lillie May Alexander also filed a demurrer to the petition for writ of prohibition. The matter has been presented to this court on briefs and oral argument.

It is urged that the writ should not be made permanent and the alternative writ should be recalled for the following reasons: (1) That neither the district attorney of the Second judicial district nor the sheriff of Davis county, the applicants for the writ on relation of the state of Utah, are

competent to initiate or prosecute these proceedings; (2) the writ will not lie because an appeal is available to the state from any adverse decision in the proceedings in the district court of the Third judicial district; (3) the Honorable Herbert M. Schiller as judge of the Third judicial district court of Salt Lake county has and had jurisdiction to hear and determine the matter of the alleged insanity of Delbert Green and to suspend the execution of the judgment of death pending a determination of that matter under and pursuant to the provisions of chapter 134 of the Session Laws of Utah 1935.

The policy of this state as indicated by its statutes, in harmony with the principles of the common law, is that no person while insane shall be tried, adjudged to punishment, or punished for a public offense. The common law and the reasons therefore are well stated by Mr. Blackstone in his Commentary. We quote from Cooley's Blackstone (4th Ed.) vol. II, p. 1231:

"Also if a man in his sound memory commits a capital offence, and before arraignment for it, he becomes mad, he ought not to be arraigned for it; because he is not able to plead to it with that advice and caution that he ought. And if, after he has pleaded, the prisoner becomes mad, he shall not be tried: for how can he make his defence? If, after he be tried and found guilty, he loses his senses before judgment, judgment shall not be pronounced; and if, after judgment, be becomes of non-sane memory, execution shall be stayed; for peradventure, says the humanity of the English law, had the prisoner been of sound memory, he might have alleged something in stay of judgment or execution."

To give effect to this humane policy provision was early made by the Legislature of the Territory of Utah and later by the Legislature of the State for a hearing touching the insanity of an accused or convicted person in every situation. The power to stay judgment and inquire into the sanity of a person under penalty of the law has been recognized, in the absence of statute, as inherent in the courts to be exercised so long as the lawmaking power should fail to

point out a method by which such questions could be heard and determined. The Legislature of Utah having acted in this respect, we are required only to determine whether the district court of the Third judicial district is proceeding regularly within its jurisdiction to exercise a power conferred by statute.

The decision on merits turns on which of two statutes is available to provide a means of determining the present sanity of a convict in the Utah state prison awaiting execution under judgment of death. Chapter 134, Laws of Utah 1935, the statute under which Judge Schiller assumed jurisdiction, is an amendment to sections 105-49-2 to 105-49-6 inclusive, Rev. St. Utah 1933. Section 105-49-1 and section 105-49-2 as amended, are as follows:

"105-49-1. No person while insane shall be tried, adjudged to punishment or punished for a public offense."

"105-49-2. Whenever a person charged with a public offense shall have escaped information or indictment therefor, or shall have been acquitted thereof upon the ground of insanity, or whenever a person so charged either before or during trial, or before the time of passing judgment or while confined as a convict in the state prison or county jail or on parole is or shall become insane a complaint under oath must be made setting forth the facts in the case and the district court of the county in which such charge is pending or in which such prison or jail is located must proceed as in this chapter set out. Said complaint may be made directly or upon information and belief, by the person accused, by any other person acting for or in his behalf, by the district attorney, or by the keeper of the prison or jail. The judge of the district court having jurisdiction thereof may of his own motion direct the district attorney to make such complaint and fix a time for such examination and determination."

The remaining sections of the chapter specify the procedure to be followed in the examination into the sanity of any person within the scope of the chapter, the place and manner of detention if he be found insane, and how dealt with when sanity returns. The amendment of 1935 provided for an examination by the judge of the district court aided by two or more disinterested physicians, instead of a

trial by jury as provided before such amendment. It also enlarged somewhat the scope of inquiry to include one who "is or shall become insane," instead of merely one who "shall become insane," and with more particularity indicated the persons who would have the right to institute such proceeding by complaint in the district court. The language of the statute includes any person "confined as a convict in the state prison," and, on superficial examination, might be said to be sufficiently broad to include a convict in the state prison awaiting execution under judgment of death. The misunderstanding with respect to jurisdiction of the Third judicial district court arises because of the generality of this language and its apparent inclusiveness notwithstanding other statutes specifically providing a means by which the insanity of one awaiting execution under sentence of death might be determined. The other statutory provisions referred to are sections 105-37-8 to 105-37-12, both inclusive, R. S. Utah 1933. These sections read as follows:

"105-37-8. No judge, tribunal or officer, other than the governor or the board of pardons, can suspend the execution of a judgment of death, except the sheriff, as provided in the six next succeeding sections, unless an appeal is taken."

"105-37-9. If after a judgment of death there is good reason to believe that the defendant has become insane, the sheriff of the county, with the concurrence of the judge of the court by which the judgment was rendered, may summon from the list of the jurors selected by the proper officers for the year a jury of twelve persons to inquire into the supposed insanity, and must give immediate notice thereof to the district attorney."

"105-37-10. The district attorney must attend the inquisition and may produce witnesses before the jury, for which purpose he may issue process in the same manner as for witnesses to attend before the grand jury, and disobedience thereto may be punished in the same manner as disobedience to process issued by the court."

"105-37-11. A certificate of the result of the inquisition must be signed by the jurors and the sheriff, and filed with the clerk of the court in which the conviction was had."

"105-37-12. If it is found that the defendant is sane, the sheriff must execute the judgment; but if it is found that he is insane, the sheriff must suspend the execution of the judgment until he receives a warrant from the judge of the court by which the judgment was rendered, directing the execution of the judgment. If it is found that the defendant is insane, the sheriff must immediately transmit a certificate of the finding to the board of pardons."

So far as we are informed, no steps have been taken by the sheriff or the judge under the sections last quoted. The validity and effect of these provisions are not directly involved, but must be considered in reaching a conclusion as to the meaning and scope of section 105-49-1, sections 105-49-2 to 105-49-6, as amended.

This court, in *State* v. *Gardner*, 62 Utah 156, 217 P. 1111, an appeal from an order of the district court denying the application, by his next friend, of a person convicted of murder to have his sanity determined under sections 9327 to 9332, Comp. Laws Utah 1917 (the same as sections 105-49-1 to 105-49-6 prior to the amendment of 1935), said that these sections were not applicable to a case where sentence of death had been imposed, but that sections 9174 to 9178, Comp. Laws Utah 1917 (the same as sections 105-37-8 to 105-37-12, above quoted), were applicable and controlling. This statement of the court is said by defendants to be dictum and therefore not decisive. In that case the court held an appeal did not lie from an order of the court denying the application for a jury trial on the question of sanity under the provisions of the sections first referred to. In the course of the opinion the court made the statement referred to and copied into the opinion the sections of the statute which it said were controlling under the facts of that case. The court gave no reasons for its pronouncement, nor did it attempt to analyze the two statutory provisions. We are convinced the court was correct in what it said. We have reached the same conclusion after an analysis of the statutes involved and review of the decisions of other states. For convenience we shall refer to the procedure outlined in

105-37-8 to 105-37-12 as chapter 37, and that contained in 105-49-1 to 105-49-6 as chapter 49.

If we assume the provisions of chapter 49 are by its terms broad enough to operate on all persons accused of crime, including those convicted of murder and confined in the state prison awaiting execution, then what force and effect are to be given to the provisions of chapter 37 which have to do specifically with persons under judgment of death and confined in the state prison awaiting execution? There is an elementary rule of statutory construction that where two statutes treat of the same subject-matter, the one general and the other special in its provisions, the special provisions control the general. *Salt Lake City* v. *Salt Lake County*, 60 Utah. 423, 209 P. 207. The application of this rule leads to the conclusion that all cases covered by the special provisions of chapter 37 are by that statute withdrawn from the operation of the general statute and such cases become and are subject to the provisions of the special statute exclusively.

Other considerations lead to the same result. The two statutes have long been the law of this state, except that now, by amendment of 1935, a different method of procedure is provided in certain cases. The Legislature carefully covered the entire field so that no person while insane should be tried, sentenced, or punished. By section 105-36-10, as amended by chapter 130, Laws of Utah 1935, the procedure now found in chapter 134, Laws of Utah 1935, is made applicable on motion in arrest of judgment on grounds of insanity. The procedure outlined in chapter 37 was intended to be followed in cases of convicts awaiting execution after sentence of death had been imposed, and that of chapter 49 is to cover all other cases within the scope of the chapter.

The mandatory language of section 105-37-8 makes it plain that the provisions of that statute are to be followed exclusively in the case of one under sentence of death because it is there said that:

"No judge, tribunal or officer, other than the governor or the board of pardons, can suspend the execution of a judgment of death, except the sheriff, as provided in the six next succeeding sections, unless an appeal is taken."

The next section provides that the sheriff with the concurrence of the judge of the court by which the judgment was rendered may summon a jury to examine into the sanity of the condemned man where "there is good reason to believe that the defendant has become insane." ■■ where certain officers are designated by statute, as the ones to initiate or conduct such a proceeding, they are the only ones who may exercise such power. *Howell* v. *Kincannon*, 181 Ark. 58, 24 S. W. (2d) 953. The statute expressly denies to the judge of any court the power to suspend execution of the sentence, and by necessary implication denies to any court jurisdiction to examine into the sanity of such a defendant, except that the judge of the court where judgment was rendered has power to act with the sheriff in determining the necessity for an examination. The statute has thus made ample provision for examination into the sanity of a prisoner awaiting execution where such is necessary to satisfy the humane requirement of the law. *People* v. *Sloper*, 198 Cal. 601, 246 P. 802.

Counsel for defendants herein attack section 105-37-8 as "a legislative attempt to bridge the power of courts to determine a judicial fact," in contravention of article 1, § 11, of the Constitution, which provides:

"All courts shall be open, and every person, for an injury done to him in his person, property or reputation, shall have remedy by due course of law, which shall be administered without denial or unnecessary delay."

We are unable to agree with counsel in this argument. It is doubtful whether the defendants in this action are in a position to question the constitutionality of that section of the statute because of the rule that such an attack on the validity of a statute cannot be made by one whose ■■ interests have not been and are not about to be prej-

udiced by its operation. *State* v. *Bettere,* 77 Mont. 66, 249 P. 666. It is quite apparent that no steps have been taken under the provisions of section 105-37-8 which affect, or if taken, could affect, any interests of either the district judge or Mrs. Alexander. However that may be, the argument for other reasons is not sound. The courts of this state have been open to the accused, Delbert Green, and he has been fully protected in every legal and constitutional right. He has had two trials and two appeals, with full privileges of defense accorded to him. The question of his sanity or insanity at the time of the commission of the homicide was fully and fairly tried and decided against his contention that he was insane at that time. As a result of well-considered legal action, his life has been declared forfeited because of his crime against society. The verdict of the jury and judgment of the court conclusively establish his sanity at the time of the commission of the crime and at the time of trial. *Lewis* v. *State,* 155 Miss. 810, 125 So. 419; *State* v. *Sloper,* supra.

When judgment of death has been passed on a defendant and date of execution fixed, the question of supervening insanity is not a right which the defendant may urge or have urged on his behalf before any court. Action comes only when the sheriff and judge of the court in which judgment was rendered have reason to believe that the defendant has become insane. An inquisition may not be demanded as a matter of right by the defendant or some one on his behalf, but may be instituted by the proper officers for humanitarian reasons and with a sense of propriety in the furtherance of the declared policy of the law that it is inhuman to execute an insane man. *State of Washington ex rel. Alfani* v. *Superior Court for Grays Harbor County,* 139 Wash. 125, 245 P. 929, 49 A. L. R. 801; *State* v. *Nordstrom,* 21 Wash. 403, 58 P. 248, 53 L. R. A. 584.

The statute has wisely left the matter to the discretion of the sheriff on whom is the duty of execution and the judge of the court where judgment was rendered, who presum-

ably has had opportunity during and after trial of observing the appearance and demeanor of the defendant, and in this case to have heard the witnesses testify as to the conditions of his mind, since the question of defendant's insanity was an issue at the trial. If these officers have any substantial or real doubt of Green's sanity, they will undoubtedly call a jury to investigate his mental condition. On the other hand, if they have no such doubt of the prisoner's sanity, they are not bound nor would they be justified in calling a jury to determine the question of sanity. The matter rests in their sound discretion. *State* v. *Nordstrom*, supra. It may be assumed that the sheriff and judge will perform their duty in this respect. *People* v. *Sloper*, supra. Under the statute, in the absence of appeal, the only officer or board, other than the sheriff and judge of the court rendering judgment, with power to intervene and prevent execution of sentence, are the Governor and the board of pardons in the proper exercise of their powers of reprieve, commutation, or pardon.

In chapter 49 there is no provision whatsoever for the judge or court of the county where the convict is confined in prison to suspend sentence of death. The provision for suspension of proceedings in section 105-49-5, as amended by Laws 1935, c. 134, are such as are entirely consistent with suspension of proceedings before judgment or of one confined under sentence to serve time in prison. There is not anything therein inconsistent or in conflict with section 105-37-8, providing that no judge, tribunal, or officer other than those mentioned therein can suspend execution of sentence of death. That section and the six following sections stand alone in the statute as the exclusive procedure where sentence of death has been passed. The provisions of chapter 49 undoubtedly control in all other cases. The last paragraph of section 105-49-5, as amended, is as follows:

"Upon filing of the complaint as herein provided all proceedings against the accused other than for the purpose of determining his

insanity, if in the judgment of the court it is deemed to be in further-ance of justice, shall be ordered suspended until the proceedings for the purpose of determining his insanity are dismissed or the accused shall have become sane. Upon the accused becoming sane after com-mitment to the state hospital the superintendent thereof shall certify such fact to the district court in and for the county from which the accused was commited, and thereupon the judge of such court shall order the accused returned to the original custody from which he was taken in execution of his commitment, and upon such return all pro-ceedings against him suspended upon his commitment shall be resumed. If the accused at the time of his commitment as herein provided was incarcerated in execution of a sentence such time as he shall spend in the state hospital shall be considered as a part of such sentence. Up-on the return of the accused to his original custody he, or any other authorized person may have the matter of his then insanity determined as in this chapter provided."

It will be noted that power is granted the court to sus-pend proceedings until the question of sanity is determined. The whole paragraph must be construed together. The latter part of the paragraph is complementary to the first part and speaks of what shall be done with the accused after sanity returns. It nowhere refers to a case where execution of death has been suspended. The scope of the proceedings to be suspended under such grant of power is clearly indi-cated by the provision there made that in one class of cases upon the accused becoming sane, after commitment to the state hospital, he should be returned to the original custody from which he was taken, there to have the proceedings against him resumed in the district court in which such pro-ceedings were pending, and if the accused at the time of his commitment was incarcerated in execution of sentence, such time as he spent in the state hospital shall be considered as a part of the sentence. After return to his original custody, he or other persons authorized may have the matter of his then insanity determined as provided in said chapter. Not any of this language is appropriate in the case of a prisoner under execution of death. If one under sentence of death or some one on his behalf could, as a matter of right, have the court inquire into his present sanity at any given time,

there might be no end of such trials or inquisitions by means of which the ends of justice would be continually delayed, if not completely defeated. The note in 49 A. L. R. 804, has expressed the law in this respect as follows:

"It is generally recognized that to permit convicted persons to arrest the execution of the sentence imposed upon them, by demanding as a legal right an inquisition into their mental condition, would be tantamount to granting them the privilege of thwarting the administration of criminal justice for an indefinite term. Hence persons in confinement awaiting the execution of the death penalty have no legal right, except where such right is conferred by statute, to have an inquisition into their mental condition. The initiating of such a proceeding is within the discretion of the court or executive having jurisdiction in such matters."

In the state of Washington there arose a case quite similar to the one before us. Guido Grossi had been convicted of murder after a trial in which the defense of insanity had been interposed. While Grossi was held in the state prison under sentence of death, an application was made to the district court of the county in which the prison was located to assume jurisdiction and inquire into the sanity of the prisoner. The court assumed jurisdiction, proceeded with such inquisition, and held the defendant to be insane. In the meantime, execution of sentence had been suspended. On appeal, the Supreme Court held that the question was moot, because the mischief, if the jurisdiction were wrongly exercised, was beyond correction, but intimated that if the question was before it in a proper case, then it might hold that the court which had imposed sentence was the right forum in which to test sanity. It also held the state was not prejudiced because notwithstanding such examination by another court, the district court wherein conviction was had still retained full power to examine into the sanity of the defendant, and if he were found to be sane, notwithstanding the contrary finding in any other court, that court should proceed to fix a time for execution. *Grossi* v. *Long*, 136 Wash. 133, 238 P. 983. Another phase of the same case came before the Supreme Court later

in *State ex rel. Alfani* v. *Superior Court, etc.,* supra. After the proceedings referred to in *Grossi* v. *Long,* supra, the prosecuting attorney filed a petition before the trial judge suggesting defendant's supervening insanity and asked the court to determine that question. Alfani, in the interest of the condemned man, then asked for change of venue, which was refused. He applied to the Supreme Court for a writ of mandamus to compel such change of venue. The court held mandamus would not lie, and said:

"There will, of course, be apparent to every practitioner the many practical objections to any rule that will permit a defendant to try out before a judge and jury not only the question of his guilt upon the criminal charge, but also the question of his sanity at the time of the commission of the offense and at the time of the trial, and then, after sentence, to again present to a judge other than the one who heard the original action the question of supervening insanity. These need not be detailed here, inasmuch as there is no statutory authority for a change of venue upon an application to the trial court to stay its execution in such a matter." 139 Wash. 125, 245 P. 929, 931, 49 A. L. R. 803.

In that state there were no statutory provisions similar to those found in our sections 105-37-8 to 105-37-12. In a state having statutes similar to ours, provisions such as those contained in chapter 49 were held not applicable to a case where defendant was under sentence of death. *State* v. *Vettere,* supra. In a state having a statute similar to our chapter 49, but in the absence of specific provisions such as found in chapter 37, it was held, notwithstanding the generality of the language, to be not applicable in the case of a convict in prison under sentence of death. *In re Herron,* 77 N. J. Law, 315, 72 A. 133.

Defendants contend prohibition will not lie because there is an adequate remedy by appeal on behalf of the state from any adverse judgment which might be rendered by Judge Schiller. This objection is not available because it is not likely that any order which might be made by Judge Schiller will be a final judgment or of such a nature as to be appealable. *State* v. *Gardner,* supra; *People*

v. *Sloper*, supra; *People* v. *Lawson*, 178 Cal. 722, 174 P. 885; *State* v. *Nordstrom*, supra; *Bulger* v. *People*, 61 Colo. 187, 156 P. 800.

The district attorney and the sheriff of Davis county have such an interest in the matter to be here determined as to give them standing in this court. The sheriff was under positive command from the district court of Davis county to execute sentence of death imposed on the prisoner. He was vitally interested in knowing whether this judgment must be executed or might be suspended by an order from the district court of Salt Lake county. His embarrassment in this respect was relieved when the Governor of the State granted a reprieve. Unless the question of jurisdiction be settled, a similar conflict of directions might occur again. Public interest demands that the question be determined to the end that orderly procedure may be followed. The duty of the district attorney is not at an end with conviction and sentence of the prisoner. By section 105-37-15, Rev. St. 1933, the district attorney is required to apply to the district court of Davis county for further proceedings in accordance with law where for any reason judgment of death has not been executed and remains in force. If no legal reason exists against execution of the judgment, the court must make an order that the sheriff execute the judgment at a specified time, and the sheriff must execute the judgment accordingly. *State ex rel. Colvin* v. *Superior Court for Walla Walla County*, 159 Wash. 335, 293 P. 986, 73 A. L. R. 555. The district attorney and sheriff, therefore, have such an interest as justifies them in bringing proceedings to have determined whether the judge of the district court of Salt Lake county may proceed to examine into the sanity of the prisoner and make orders respecting such prisoner or the execution of sentence theretofore pronounced by the district court of Davis county.

For the reasons given, the writ of prohibition heretofore issued is made permanent.

ELIAS HANSEN, C. J., and EPHRAIM HANSON and MOFFAT, JJ., concur.

WOLFE, Justice (concurring).

While it is not clear to me what motive the Legislature had in providing a procedure for the initiation of insanity proceedings to determine that issue as regards one under sentence of death, different from that which would be applicable in all other cases before, during or after trial or sentence, yet the reasoning of Mr. Justice FOLLAND in his opinion appears to me inescapable.

If the features of Rev. St. 1933, 105-49-1 to 105-49-6 and 105-37-8 to 105-37-12, had not been carried side by side in the 1917 compilation only to be again incorporated in the 1933 revision, there might be a basis for an investigation as to whether sections 105-37-8 to 105-37-12 had not been impliedly repealed. The only other way out for the defendants in this case, in view of the interlocking provisions, would be to hold that in case of a death sentence two procedures were available. But with section 105-37-8 staring us in the face such a holding would appear to be directly against its specific mandate.

I am doubtful as to whether the district attorney is a party with sufficient interest to bring this action. The fact that he has the duty to see that sentence is executed, if no legal reason exists for not doing so, would not impose upon him the duty or give him an interest in determining the procedure for trying out the insanity issue. If at the time the sentence was to be executed that was not done, then his duty would be to apply to the court which determines whether a legal reason for not executing it exists. As I see it the district attorney has no duty nor any interest other than that of any other citizen up to that time. The fact that later, when the sentence by its terms is to be executed, it may not be done because of legal complications, does not impose upon him any duty nor give him the interest required to sue out the writ. But Sheriff Holbrook is in a different cate-

gory. He has an immediate interest in any proceeding to determine the present insanity of a man under death sentence. Sections 105-37-8 to 105-37-12 make it his exclusive province to initiate proceedings. If, by some other proceeding, he is being denied the right to himself perform this duty or exercise this power, whichever it may be called, he certainly has an interest in determining whether such procedure is proper. So it follows that the writ was issued on the application of a proper party and cannot be dismissed for lack of such party.