Leland D. MORAN, Plaintiff
and Appellant,

v.

Georgia R. SHAW, Acting Director, Utah State Department of Public Safety, Driver's License Division, Defendant and Respondent.

No. 15217.

Supreme Court of Utah.

May 25, 1978.

P. Robert Knight, Salt Lake City, for plaintiff and appellant.

Robert B. Hansen, Atty. Gen., Bruce M. Hale, Asst. Atty. Gen., Salt Lake City, for defendant and respondent.

CROCKETT, Justice:

Plaintiff Leland D. Moran appeals from a judgment of the district court which, pursuant to a trial de novo, as provided by statute referred to below, affirmed the revocation of his driver's license by the Department of Public Safety because he had refused to submit to a breath test when arrested for driving while intoxicated.[1]

Plaintiff contends: that the evidence does not support the finding that he unreasonably refused to submit to the test; that he was denied the right of counsel; and that his other rights were not properly explained to him.

On December 24, 1976, about 11:00 p. m., the plaintiff was driving 13 miles east of Wendover, Utah, when Gary Ogilvie, a Utah highway patrolman, recorded his

---

1. As required by our implied consent statute, 41–6–44.10, U.C.A., 1953.

speed at 82 m. p. h. Officer Ogilvie stopped the plaintiff and, after noticing his slurred speech and the smell of alcohol, arrested him for driving under the influence of intoxicating liquor. The officer then read the *Miranda* warning to the plaintiff and took him to the jail in Wendover. Officer Ogilvie testified that, enroute to the jail, he explained the chemical tests used to determine blood alcohol content and requested the plaintiff to submit to a breath test. The plaintiff became argumentative and stated that he would not take the test.

After arriving at the jail, Officer Ogilvie explained that if he refused to take the test his driver's license would be subject to revocation for one year. Plaintiff then asked if he could use the phone to call a friend in Wendover. When he was unable to contact his friend, the plaintiff stated that he would not take the test until his lawyer was present. The officer offered plaintiff the privilege of having either an attorney or physician present before taking the test, but that he would have to get them himself.[2] Plaintiff declined to use the proffered telephone, asserting that the officer must appoint him an attorney; and that he would not take the test until the attorney was present.

The plaintiff became belligerent and a scuffle ensued between him and Officers Ogilvie and Eric Nelson, who had come to assist in administering the breathalyzer test. The officers put plaintiff in a cell to await his decision as to whether he wanted to call an attorney. Officer Ogilvie again told plaintiff about the implied consent law and read the statute to him. The plaintiff made no response and proceeded to fall asleep. After waiting until 1:30 a. m., Officer Ogilvie left the jail. Later that day, he filed a report that the plaintiff had refused to take the test. It was upon a hearing which disclosed the foregoing facts that the Department of Public Safety, Driver's License Division, revoked the plaintiff's license.

The statutory provisions pertinent here are contained in Section 41–6–44.10(c) which provide that, when a person is arrested for driving under the influence of intoxicating liquor and is requested to submit to a chemical test, but refuses to do so:

> . . . the test shall not be given and the arresting officer shall advise the person of his rights . . . .

It further states that, after receiving a report from the arresting officer that the test was refused, a hearing is to be conducted by the Department of Public Safety and, if it is determined that:

> . . . the person was granted the right to submit to a chemical test and *without reasonable cause refused* to submit to such test, . . . the department shall revoke for one year his license or permit to drive. [Emphasis added.]

That section continues that:

> Any person whose license has been revoked . . . shall have the right to file a petition within thirty days thereafter for a hearing in the matter in the district court . . . . Such court is hereby vested with jurisdiction, and it shall be its duty to set the matter for trial de novo . . . and thereupon to take testimony and examine into the facts of the case and to determine whether the petitioner's license is subject to revocation under the provisions of this act.

The reasoning justifying the consent provisions of the statute is thus: public safety and welfare are so involved in the driving of motor vehicles upon public highways that it is the duty and the prerogative of government under the police power to promulgate and enforce safety measures, an important one of which is to attempt to prevent driving while intoxicated. In order

2. See *Hunter v. Dorius*, 23 Utah 2d 122, 458 P.2d 877 (1969-. Although not applicable to this case, we note that section 41–6–44.10(g) has since been enacted which provides: "For the purposes of determining whether to submit to a chemical test or tests, the person to be tested shall not have the right to consult an attorney nor shall such a person be permitted to have an attorney, physician or other person present as a condition for the taking of any test."

to accomplish that purpose it is further reasoned that the driving of a motor vehicle upon the public highways should be regarded as a privilege, so that when a person applies for and obtains a driver's license, in consideration of the granting of the privilege to drive, he is deemed to give his consent to such a test. Thus when he is arrested by an officer, who has reason to believe that he has been driving in an intoxicated condition, he must consent to such a test or be subject to having his driver's license revoked.

The statute plainly and simply requires that such an accused give his consent; and it does not give him the privilege of imposing any conditions as a prerequisite thereto. However, we have no doubt that it is implicit in the statute that it is subject to a fair and sensible application under reasonable conditions. On the other hand, we see no justification for permitting such an accused to impose any unreasonable or impractical conditions which might delay or obstruct the giving of the test. For an accused to impose such conditions as a prerequisite to his consent is no consent at all. The foregoing assertions find support in the language that if it is found that such an accused "without reasonable cause refused to submit to such a test" his driver's license is subject to revocation.

After the Department of Public Safety had revoked the plaintiff's license, upon his trial in the district court, it found: (1) that there was probable cause to stop the plaintiff and to request him to submit a chemical test, (2) that the plaintiff was properly instructed with respect to the implied consent statute and was given a reasonable request and opportunity to take the test; and (3) that he unreasonably refused to do so.

From the facts as herein above cited, it will be seen that there is ample basis in the evidence to justify the district court's findings and for its refusal to reinstate plaintiff's driver's license.

Affirmed. No costs awarded.

ELLETT, C. J., and WILKINS and HALL, JJ., concur.

MAUGHAN, J., concurs in result.