Tallie Lee CAVANESS, Plaintiff and Appellant,

v.

S. Tony COX, Director, Drivers License Division, Department of Public Safety, State of Utah, Defendant and Respondent.

No. 15801.

Supreme Court of Utah.

July 9, 1979.

Mooney, Jorgensen & Nakamura, D. Sanford Jorgensen, Salt Lake City, for plaintiff and appellant.

Robert B. Hansen, Atty. Gen., Bruce M. Hale, Asst. Atty. Gen., Salt Lake City, for defendant and respondent.

HALL, Justice:

The Department of Public Safety deprived plaintiff of his license to operate a motor vehicle because of his refusal to submit to a chemical test to determine the alcoholic content of his blood as provided for in our implied consent statute.[1] The matter was heard de novo[2] in the district court and from a judgment thereof sustaining the action of the Department, plaintiff presents this appeal.

There is no material dispute in the facts and the trial record supports the following abstract thereof: Plaintiff was stopped by a police officer for a driving offense at which time he had the odor of alcohol about him, his speech was slurred, he displayed a lack of coordination, he admitted having consumed beer, and he refused to engage in a series of field sobriety tests. He was placed under arrest for exhibition driving and for driving under the influence of alcohol. He was then requested to take a breathalyzer test which he refused. The implied consent law was read to him and another request was made to submit to the test which was refused. He was then taken to the jail where he was again requested to submit to the test at which time he refused "unless his attorney was present." The consequences of his refusal were explained to him and he was permitted to read the implied consent law.

Plaintiff was in the final semester of law school, had taken criminal law, testified he had "an expert knowledge of the law," and had studied the implied consent law. He also testified that the real reason he refused the test was because he was angry at the police officers and felt his rights had been violated.

In finding that the plaintiff had refused to take the requested chemical test the trial court made the following observation:

Well, as far as the petitioner is concerned, he had a chip on his shoulder clear up to his eyebrows. He wasn't about to take a test. He had a little smattering of law and thought he knew everything. There's no question about that in my mind. . . . Odor of alcohol and his admission to having something to drink I think is sufficient to allow the police officer to give a field test. . . . And I think his refusal to take a field test is also indicative there, probable cause for arrest, to make a determination as to the alcohol in the blood.

Plaintiff asserts two points on appeal: (1) that the implied consent statute deprives him of the constitutional right against self-incrimination and the right to counsel, and (2) that he had a right to reasonably refuse to submit to the chemical test.

The statutory provisions which bear upon this appeal read in pertinent part as follows:

U.C.A., 1953, 41–2–1(o) "License"— means the *privilege* to operate a motor vehicle over the highways of this state. [Emphasis added.]

U.C.A., 1953, 41–6–44.10—(a) Any person operating a motor vehicle in this state shall be deemed to have given his consent to a chemical test or tests of his breath, blood, or urine for the purpose of determining whether he was driving or in actual physical control of a motor vehicle while under the influence of alcohol, . . provided that such test is or tests are administered at the direction of a peace officer having grounds to believe such person to have been driving or in actual physical control of a motor vehicle while under the influence of alcohol, . . . .

(b) If such person has been placed under arrest and has thereafter been requested by a peace officer to submit to any one or more of the chemical tests

---

1. U.C.A., 1953, 41·6–44.10.

2. Ibid., subsection (b).

provided for in subsection (a) of this section and refuses to submit to such chemical test or tests, such person shall be warned by a peace officer requesting the test or tests that a refusal to submit to the test or tests can result in revocation of his license to operate a motor vehicle. Following this warning, unless such person immediately requests the chemical test or tests as offered by a peace officer be administered, no test shall be given and a peace officer shall submit a sworn report that he had grounds to believe the arrested person had been driving or was in actual physical control of a motor vehicle while under the influence of alcohol . . . and that the person had refused to submit to a chemical test or tests as set forth in subsection (a) of this section. [Statute then provides for hearing before department and trial de novo in district court.]

\* \* \* \* \* \*

(f) The person to be tested may, at his own expense, have a physician of his own choosing administer a chemical test in addition to the test or tests administered at the direction of a peace officer. . .

(g) For the purpose of determining whether to submit to a chemical test or tests, the person to be tested shall not have the right to consult an attorney nor shall such a person be permitted to have an attorney, physician or other person present as a condition for the taking of any test.

\* \* \* \* \* \*

██ The foregoing statutory provisions, as they pertain to implied consent matters, are obviously civil in nature, as opposed to criminal, since they are devoid of criminal sanctions and provide only for revocation of the privilege of operating a motor vehicle.

The statutes are further distinguished as civil by reason of the fact that an administrative hearing may be had subsequent to the test, followed by a trial de novo (as here), which affords the right to confront witnesses and also affords an opportunity to challenge the accuracy of the testing procedure and its result. The statute also affords the right to have one's own scientific test performed contemporaneously with the test requested by the officer.

Numerous cases in other jurisdictions have similarly held implied consent proceedings to be civil in nature and not criminal.[3]

Plaintiff does not actually dispute the fact that implied consent proceedings are civil in nature, that the right to counsel extends only to criminal proceedings,[4] and that, as a matter of law, no right to counsel exists in implied consent proceedings.[5] Nevertheless, in an effort to raise a constitutional question, he looks *past* the implied consent proceeding to the *criminal offense* of driving under the influence that *may* subsequently be prosecuted against him. He contends that the determination whether or not to submit to the chemical test occurs at a "critical stage" of that criminal proceeding[6] since subsection (h) of the statute hereinabove set forth provides that evidence of a refusal to submit to the test is admissible in such a criminal proceeding arising out of the same incident.

██ The constitutionality of a statute is to be considered in the light of the standing of the party who seeks to raise the

---

**3.** *Deaner v. Commonwealth*, 210 Va. 285, 170 S.E.2d 199 (1969); *Agnew v. Hjelle*, N.D., 216 N.W.2d 291 (1974); *Calvert v. State*, 184 Colo. 214, 519 P.2d 341 (1974); *Campbell v. Superior Court*, 106 Ariz. 542, 479 P.2d 685 (1971); *Mills v. Bridges*, 93 Idaho 679, 471 P.2d 66 (1970); *State v. Severino*, 56 Haw. 378, 537 P.2d 1187 (1975); *Stratikos v. Department of Motor Vehicles*, 4 Or.App. 313, 477 P.2d 237 (1970); *Swenumson v. Iowa Department of Public Safety*, Iowa, 210 N.W.2d 660 (1973); and *Ziemba v. Johns*, 183 Neb. 644, 163 N.W.2d 780 (1969).

Also in accord, *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966) and *U. S. v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967).

**4.** Constitution of the United States, 6th Amend.; Constitution of Utah, Art. 1, Sec. 12.

**5.** See *Schmerber, Mills* and *Calvert*, supra, footnote 3.

**6.** See *U. S. v. Wade*, supra, footnote 3.

question and of its particular application; and a person may challenge the constitutionality of a statute only when and as far as it is being, or is about to be applied to his disadvantage.[7]

This Court in *State v. Kallas*[8] expressed the rule on the matter as follows:

This Court is committed to the rule that an attack on the validity of a statute cannot be made by parties whose interests have not been, and are not about to be, prejudiced by the operation of the statute.

Also, the cases of *State v. Barlow*[9] and *State v. Hoffman*[10] stand for the proposition that a person affected by one portion of a statute may not plead the invalidity of another portion of the same statute not applicable to his case.

■ Applying the foregoing principles to the facts of this case, plaintiff has no standing to raise the question of constitutionality since this case involves only a civil matter wherein neither the question of the right to counsel in a criminal case nor the question of admissibility of evidence as to the refusal or the results of a chemical test are at issue and before the Court.

■ We therefore pass to the final point on appeal, that of a right to reasonably refuse to submit to a chemical test.

Plaintiff cites certain Utah cases[11] interpreting *prior* law as recognizing a "reasonable refusal" to submit to a chemical test. However, the statute has since been amended[12] to expressly declare that "for the purpose of determining whether to submit to a chemical test or tests, the person to be

tested shall not have the right to consult an attorney nor shall such person be permitted to have an attorney . . . present as a condition for the taking of any test." [13]

The foregoing amendment precludes the defense of "reasonable refusal" as was contemplated by said prior cases and now provides for a simple "yes" or "no" to the officer's request,[14] the obvious legislative purpose being to eliminate delays in the taking of the test in light of the fact that alcohol quickly dissipates with the passage of time.

In the case of *People v. Sudduth*,[15] the California Supreme Court affirmed a conviction of the criminal offense of driving under the influence and had this to say:

. . . Suspects have no constitutional right to refuse a test designed to produce physical evidence in the form of a breath sample [citations omitted] whether or not counsel is present [citations omitted].

We note that the physical and psychological disturbance of the individual involved in obtaining a breath sample is apt to be significantly less than that involved in extracting a blood sample, an evidence gathering technique recently approved in *Schmerber v. State of California* (1966) 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908, and that the blood alcohol test and the breath test for alcoholic absorption are alternate means for determining the percentage of alcohol in the blood. The value of such objective scientific data of intoxication to supplement the fallible observations by humans of behavior seemingly symptomatic of intoxication cannot be disputed. (*People v. Duroncelay*

7. 16 C.J.S. Constitutional Law § 76.

8. 97 Utah 492, 94 P.2d 414 (1939), citing *State ex rel. Johnson v. Alexander*, 87 Utah 376, 49 P.2d 408 (1935) and *Utah Mfrs.' Ass'n v. Stewart, et al.*, 82 Utah 198, 23 P.2d 229 (1933). The *Kallas* case was recently cited with approval in *Sims v. Smith*, Utah, 571 P.2d 586 (1977).

9. 107 Utah 292, 153 P.2d 647 (1944).

10. 91 Utah 462, 64 P.2d 615 (1937).

11. *Hunter v. Dorius*, 23 Utah 2d 122, 458 P.2d 877 (1969); *Peterson v. Dorius*, Utah, 547 P.2d

693 (1976); *Moran v. Shaw*, Utah, 580 P.2d 241 (1978).

12. In 1977, prior to the date this case arose.

13. See subsection (g), footnote 1 supra.

14. *State v. Pandoli*, 109 N.J.Super. 1, 262 A.2d 41 (1970).

15. 65 Cal.2d 543, 55 Cal.Rptr. 393, 421 P.2d 401 (1966); see also, *Schmerber v. California*, supra, footnote 3.

(1957) 48 Cal.2d 766, 772, 312 P.2d 690.) In a day when excessive loss of life and property is caused by inebriated drivers, an imperative need exists for a fair, efficient, and accurate system of detection, enforcement and, hence prevention. [Citations omitted.]

The Arizona Supreme Court in *Campbell v. Superior Court* [16] denied any right to counsel under its implied consent law and held that one has no right to refuse to submit to a chemical test in the following language:

In Arizona, . . . "[I]f a person under arrest refuses to submit to a chemical test designated by the law enforcement agency as provided in subsection A, none shall be given." This language does not give a person a "right" to refuse to submit to the test only the physical power. We agree with the court in *Bush v. Bright,* supra, that the "obvious reason for acquiescence in the refusal of such a test by a person who as a matter of law is 'deemed to have given his consent' is to avoid the violence which would often attend forcible tests upon recalcitrant inebriates." [Citation omitted.] It is the opinion of this court that since a person does not have a right to refuse to submit to the test and because the refusal itself is not "testimonial communication" that comment upon such refusal is not improper.

\*  \*  \*  \*  \*  \*

The United States Supreme Court in *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) held that an accused has a right to the assistance of counsel at any critical stage of the prosecution. In *Wade* the Court found that a post-indictment lineup was such a critical stage. The following passage from *Wade,* however, makes it evident that under the rationale of that decision respondent was not entitled to counsel prior to deciding whether or not to submit to the breathalyzer test:

"The Government characterizes the lineup as a mere preparatory step in the gathering of the prosecution's evidence not different—for Sixth Amendment purposes—from various other preparatory steps, such as systematized or scientific analyzing of the accused's fingerprints, blood sample, clothing, hair, and the like. We think there are differences which preclude such stages being characterized as critical stages at which the accused has the right to the presence of his counsel. Knowledge of the techniques of science and technology is sufficiently available, and the variables in techniques few enough, that the accused has the opportunity for a meaningful confrontation of the Government's case at trial through the ordinary process of cross-examination of the Government's expert witnesses and the presentation of the evidence of his own experts. The denial of a right to have his counsel present at such analyses does not therefore violate the Sixth Amendment; they are not critical stages since there is minimal risk that his counsel's absence at such stages might derogate from his right to a fair trial." 388 U.S. at pages 227, 228, 87 S.Ct. at pages 1932–1933.

As previously noted, under Arizona's Implied Consent Law a person does not have a right to refuse to submit to a chemical test *only* the physical power; therefore, as in *Schmerber,* there is no issue of counsel's ability to assist respondent in respect of any rights he did possess. It is the opinion of this court that respondent was not entitled to the assistance of counsel in deciding whether or not to submit to the breathalyzer test. [Citations omitted.]

The New Hampshire Supreme Court in *State v. Petkus,* [17] in affirming a driving under the influence conviction, held that right to counsel is not present in implied consent proceedings and noted the following:

---

16.  Supra, footnote 3.

17.  110 N.H. 394, 269 A.2d 123 (1970).

*We hold that the decisions to be made by an accused under our implied consent law are not essentially "a lawyer's decision" but, on the contrary, can be made by a defendant in the absence of the assistance of counsel without any substantial prejudice to his rights under the Sixth Amendment.*

*In other words we hold that the taking of defendant's blood under the implied consent law was not a "critical" stage of the criminal proceeding requiring the assistance of counsel "to preserve the defendant's basic right to a fair trial." The Trial Court properly ruled that the results of the test of defendant's blood were admissible in evidence at the trial. [Citations omitted. Emphasis added.]*

In regard to what constitutes a refusal to submit to a chemical test, the court in *Spradling v. Deimeke*[18] had the following to say:

*There is no mysterious meaning to the word "refusal". In the context of the implied consent law, it simply means that an arrestee, after having been requested to take the breathalyzer test, declines to do so of his own volition. Whether the declination is accomplished by verbally saying, "I refuse," or by remaining silent and just not breathing or blowing into the machine, or by vocalizing some sort of qualified or conditional consent or refusal, does not make any difference. The volitional failure to do what is necessary in order that the test can be performed is a refusal. [Emphasis added.]*

Also, in *Mills*[19] it was stated:

*It has been quite uniformly held by the courts which have considered the issue that a qualified or conditional refusal to take a test to determine the level of blood alcohol is a refusal within the meaning of statutes similar to ours. A defendant cannot condition his consent of the test upon the presence of counsel. [Citations omitted. Emphasis added.]*

**18.** Mo., 528 S.W.2d 759 (1975).

**19.** Supra, footnote 3.

There is substantial, competent, admissible evidence in the record to support the trial court and we therefore do not disturb it.[20]

Judgment affirmed. No costs awarded.

CROCKETT, C. J., and WILKINS and STEWART, JJ., concur.

MAUGHAN, Justice (concurring in result):

In the result, I concur. The reader is referred to my dissent in *Beck v. Cox*, Utah, 597 P.2d 1335, 1339.

**20.** *Griffeth v. Zumbrennen*, Utah, 577 P.2d 129 (1978).