**John R. McCALL, Plaintiff and Respondent,**

v.

**Earl N. DORIUS, Director, Driver License Division of the State of Utah, Defendant and Appellant.**

**No. 13450.**

Supreme Court of Utah.

Oct. 16, 1974.

Vernon B. Romney, Atty. Gen., Salt Lake City, M. Reid Russell, Bernard M. Tanner, Asst. Attys. Gen., for defendant and appellant.

David M. Bown, Salt Lake City, for plaintiff and respondent.

ELLETT, Justice:

The defendant appeals from an order made by the trial court in a civil case restoring driving privileges to the plaintiff herein.

The plaintiff was arrested for driving while under the influence of intoxicating liquor by a trooper who had reasonable grounds to believe that the offense had been and was being committed. We are not here concerned with the outcome of the trial for that crime or with whether there was or will be such a trial.

Section 41–6–44.10, U.C.A.1953, as amended, so far as pertinent herein reads:

(a) Any person operating a motor vehicle in this state shall be deemed to

have given his consent to a chemical test of his breath or blood for the purpose of determining the alcoholic content of his blood, provided that such test is administered at the direction of a peace officer having reasonable grounds to believe such person to have been driving in an intoxicated condition. The arresting officer shall determine within reason which of the aforesaid tests shall be administered.

*     *     *     *     *     *

(c) If such person has been placed under arrest and has thereafter been requested to submit to any one of the chemical tests provided for in subsections (a) or (b) of this section and refuses to submit to such chemical test, the test shall not be given and the arresting officer shall advise the person of his rights under this section. Within twenty days after receiving an affidavit from the arresting officer to the effect that such person has refused a chemical test the department shall notify such person of a hearing before the department. If at said hearing the department determines that the person was granted the right to submit to a chemical test and without reasonable cause refused to submit to such test, or if such person fails to appear before the department as required in the notice, the department shall revoke for one year his license or permit to drive. Any person whose license has been revoked by the department under the provisions of this section shall have the right to file a petition within thirty days thereafter for a hearing in the matter in the district court in the county in which such person shall reside. Such court is hereby vested with jurisdiction, and it shall be its duty to set the matter for trial de novo upon ten days' written notice to the department and thereupon to take testimony and examine into the facts of the case and to determine whether the petitioner's license is subject to revocation under the provisions of this act.

Mr. McCall refused to take a test, and the defendant herein duly had a hearing and cancelled the driving license of Mr. McCall, who then brought suit in the district court to have the cancellation set aside.

After a trial of the matter, the judge of the district court found the following:

*     *     *     *     *     *

8. The trooper read petitioner his Miranda Rights to which petitioner repeatedly indicated he did not understand.

*     *     *     *     *     *

10. That petitioner was advised of the Utah Implied Consent Law without securing a waiver under the Miranda warning and that such advice was given by reading from a form provided by the Department of Public Safety which contains the Miranda warning and the Implied Consent Law and no other advice.

11. That thereafter the petitioner requested to call his wife and his attorney and was denied both requests.

12. That thereafter, petitioner refused to take the chemical tests offered by the Trooper.

The court thereupon concluded:

1. That the petitioner had a right to contact counsel prior to deciding whether to take the offered chemical tests under the Implied Consent Law.

2. That the Court makes no specific finding in regard to whether the nature of a Driver's License Hearing is "purely civil" or "quasi-criminal" in nature and to the resultant questions of whether a refusal to waive the rights guaranteed under Miranda precludes an officer from proceeding with advice as to the Implied Consent Law and its petitioner's refusal of tests thereunder because even if it is purely civil in nature it is clear that the officer did not properly qualify his advice making clear the non-application of the Miranda warning to the driver's license question.

3. That the petitioner's refusal under the above facts and the law as set forth

does *not* constitute a rejection warranting the suspension of petitioner's driver's license.

There is no evidence to sustain a finding that the form provided by the Department of Public Safety which was read to McCall contained the Miranda warning or any reference thereto. In fact, the form was introduced as an exhibit, and no mention is made of Miranda thereon.

There is no evidence that McCall was refused the right to call his wife. He testified that his contact lenses hurt his eyes and that he asked the officers to stop along the way and allow him to phone somebody to come get his lenses. The arrest was made approximately ten miles from the jail, and it required only a few minutes to travel that distance. The officers denied that Mr. McCall made any such in-transit request. Besides, as soon as he was booked at the jail, he was afforded the use of a telephone. Because he could not reach his wife, he called a friend of his who located her, and she met him shortly thereafter.

Regarding the finding that McCall was not permitted to call an attorney, he had the use of the phone as soon as he was booked, but he did not call or attempt to call an attorney.

McCall was very belligerent toward the arresting officer. When the so-called Miranda warning was read to him by the officer, he pretended not to understand it. It was read three times. The last time it was read and discussed sentence by sentence, and then McCall said he understood it except as to the part about having an attorney present before answering questions.

Thereafter the trooper read to McCall the implied consent law as above set out, and McCall refused to take any test. Thereafter the trooper again read to him that statute and explained the consequences of a refusal to take a test, to wit, that he might lose his driver's license for a period of one year.

Two officers testified that McCall refused to take the test. McCall himself testified as follows: ·

Q Do you deny that you said that you would not take any tests?

A No. I don't.

Q If you hadn't had much to drink, why were you afraid to take a chemical test to test that?

A Not a question of being afraid to take a test; it was the attitude and things that built up to the fact that they said I had to take a test.

There was no evidence that McCall was confused regarding the fact that if he failed to take the breath or blood test, he might lose his driving privilege. In that regard he testified as follows:

Q Do you remember reading that in the driver's handbook when you took the driver's test?

A No. I don't.

Q Do you deny that you remember the officer telling you that?

A That I had?

Q You could lose your license if you didn't take the chemical test?

A Not until after we were at jail, no.

Q But you recall him telling you that?

A It was after I was booked, that's when I recall that. . . .

Despite this, he still refused to take the test. The record indicates that he was obstreperous, vulgar, and not about to take any sobriety tests. It does not show any confusion on his part at all.

The findings made by the trial court are not justified by the evidence. The case is reversed and remanded with directions to the trial court to cancel plaintiff's driver's license as required by law. No costs are awarded.

CALLISTER, C. J., and CROCKETT and TUCKETT, JJ., concur.

HENRIOD, J., does not participate herein.