**Betty P. PETERSON, Plaintiff and Respondent,**

v.

**Earl N. DORIUS, Director, Driver License Division of the State of Utah, Defendant and Appellant.**

No. 13981.

Supreme Court of Utah.

March 19, 1976.

Vernon B. Romney, Atty, Gen., Bernard M. Tanner, Asst. Atty. Gen., Salt Lake City, for defendant and appellant.

D. Gilbert Athay, Salt Lake City, for plaintiff and respondent.

BALDWIN, District Judge:

The defendant, Director, Driver License Division, State of Utah, appeals from judgment of the district court in favor of plaintiff, rescinding an order of the Department revoking the driver's license of plaintiff. The order of revocation of plaintiff's driver's license was entered by the Department after a hearing, as provided by statute, and was based upon a report and testimony of a Utah State Highway trooper who reported plaintiff refused to submit to a chemical test to determine her blood alcohol content as required by Title 41–6–44.10, Utah Code Annotated, 1953, as amended, after her arrest for driving under the influence of intoxicating liquor. The district court, after a trial de novo, as provided by statute, ruled that the conduct of plaintiff did not constitute a refusal to submit to a chemical test for blood alcohol content and that her driver's license should not be revoked. Affirmed.

On April 16, 1974, plaintiff was arrested by a Utah Highway trooper, at 3500 South Redwood Road in Salt Lake County, Utah. The trooper observed the course of the car as she was driving, and then stopped the automobile, smelled the odor of alcohol, and placed her under arrest for driving under the influence of intoxicating beverage. He advised her of her "Miranda" rights and the provisions of the Utah Implied Consent Law.[1] She indicated she would submit to a chemical test of her breath or blood and she was taken to the

1. Title 41–6–44.10, U.C.A.1953.

Salt Lake County Jail where the chemical tests could be made.

At 3:00 a. m., at the Salt Lake County Jail, she was allowed to talk to her lawyer, who informed her and the trooper that he would come to the jail and advise her concerning the test. Mrs. Peterson told the trooper that she would submit to a chemical test of her breath or blood but would not do so until her lawyer arrived. At approximately 4:15 a. m., Mrs. Peterson, at the request of the trooper, again called her lawyer to see if he were coming to the jail, and she was advised the lawyer had left home to go to the jail and she gave this information to the trooper. Five to ten minutes later the trooper left the jail, after advising Mrs. Peterson he could wait no longer. Before leaving, he advised Mrs. Peterson of her rights concerning the alcohol tests and she again stated she would submit to the test when her lawyer arrived. The trooper left the jail, went to his car in the parking lot and completed some reports, including a preprinted form entitled "Report of Refusal to Submit to Chemical Test." In this report he stated Mrs. Peterson was arrested at 2:40 a. m. and the time of the test refusal was 4:30 a. m. Mrs. Peterson's lawyer arrived at the jail about five minutes after the trooper had left. The trooper was not contacted by the lawyer, as he had left no information as to where he was going, and he did not return to the jail but drove home.

The trooper's report of the refusal of Mrs. Peterson to submit to the chemical test for blood alcohol content resulted in the Driver's License Division, State of Utah, conducting a hearing and entering an order revoking the driver's license of Mrs. Peterson.

Title 41–6–44.10, Utah Code Annotated, 1953, provides for the revocation of a driver's license for refusal, without reasonable cause to submit to a chemical test for determining blood alcohol content of one arrested by an officer, having reasonable ground to believe such person to have been driving a motor vehicle in an intoxicated condition. The statute also provides for the filing of a petition in the district court and a trial de novo, and the district court to take testimony and examine into the facts of the case and determine whether the plaintiff's license is subject to revocation under the act. The applicable statutory provisions are:

41–6–44.10. *Implied consent to chemical tests for alcoholic content of blood —Refusal to allow—Revocation of license—Court action on revocation—Person incapable of refusal—Results of test available—Who may give tests.*—(a) Any person operating a motor vehicle in this state shall be deemed to have given his consent to a chemical test of his breath or blood for the purpose of determining the alcoholic content of his blood, provided that such test is administered at the direction of a peace officer having reasonable grounds to believe such person to have been driving in an intoxicated condition. The arresting officer shall determine within reason which of the aforesaid tests shall be administered.

\*　　\*　　\*　　\*　　\*　　\*

(c) If such person has been placed under arrest and has thereafter been requested to submit to any one of the chemical tests provided for in subsections (a) or (b) of this section and refuses to submit to such chemical test, the test shall not be given and the arresting officer shall advise the person of his rights under this section. Within twenty days after receiving an affidavit from the arresting officer to the effect that such person has refused a chemical test the department shall notify such person of a hearing before the department. If at said hearing the department determines that the person was granted the right to submit to a chemical test and *without reasonable cause* refused to submit to such test, or if such person fails to appear before the department as required in the notice, the department shall revoke for one year his license or permit to drive. Any person whose license has

been revoked by the department under the provisions of this section shall have the right to file a petition within thirty days thereafter for a hearing in the matter in the district court in the county in which such person shall reside. Such court is hereby vested with jurisdiction, and it shall be its duty to set the matter for trial de novo upon ten days' written notice to the department and thereupon to take testimony and examine into the facts of the case and to determine whether the petitioner's license is subject to revocation under the provisions of this act.

The statutory provision requires license revocation upon a finding by the Department of Public Safety, State of Utah:

. . . If at said hearing the department determines that the person was granted the right to submit to a chemical test and without *reasonable cause refused* to submit to such test, . . . .

The district court judge made a finding upon the trial de novo that Mrs. Peterson advised the trooper she would submit to the chemical test upon the arrival of her lawyer. There is no finding that she refused to submit to a chemical test. The trial court concluded that the delay in taking the chemical test until her lawyer arrived did not constitute a refusal to submit to a chemical test of her breath or blood.

This court has many times stated that findings of the trial court, supported by substantial competent evidence, will not be disturbed on appeal.[2]

Mrs. Peterson never refused to submit to chemical tests, insisting only that the tests be delayed until her lawyer arrived at the jail. There is no evidence in the record that she was stalling for time, as she clearly stated she would take the test when the attorney arrived.

The facts in this case are close to those in *Hunter v. Dorius*.[3] In that case Hunter declined to take a chemical test until he had consulted his attorney, and after a wait of some two hours and five minutes from the time of arrest until phone call from Hunter's lawyer, the patrolman refused to go forward with the tests. This court in upholding the decision of the trial court, that Hunter had not refused the chemical test, stated:

Based upon these facts the trial judge made a finding that the plaintiff had not refused to submit to the chemical test required by statute. . . .

The statutory provisions concerning the revocation of the driver's license require a finding that the person whose license is sought to be revoked, *"without reasonable cause refused to submit to such test."*

It is clear that the legislature recognizes that there might be reasonable causes to refuse to submit to a chemical test and refusal, with reasonable cause, would not justify a revocation. Mrs. Peterson was allowed to call her attorney and upon his advice she delayed taking the test until he was present. It cannot be said that an individual under arrest, facing criminal sanctions, is unreasonable in following the advice of her lawyer. To the contrary, it would be unreasonable for her to disregard the advice of her lawyer and proceed to have the chemical test made, tests in connection with the criminal offense for which she had been arrested and taken to jail. The wait for the lawyer was from 3:30 a. m., when she was allowed to talk to her lawyer, until 4:15 a. m., plus five or ten minutes, when the trooper left the jail and apparently abandoned the testing of Mrs. Peterson. It doesn't appear an unreasonable length of time for the lawyer to get out of bed, talk on the telephone, dress, drive from his home in an adjacent city to

2. See *Hunter v. Dorius*, 23 Utah 2d 122, 458 P.2d 877 (1969); *McCall v. Dorius*, 527 P. 2d 647 (Utah 1974); *Gassman v. Dorius*, 543 P.2d 197 (Utah 1975).

3. Footnote 2, supra.

Salt Lake, park his vehicle, and get to the jail. We cannot say that under the facts of the case the plaintiff was unreasonable in her refusal to take the test before her lawyer arrived. In fact, she never refused, only delayed as directed by counsel. (All emphasis added.)

The ruling of the district court is clearly supported by competent believable evidence.

HENRIOD, C. J., and TUCKETT, J., concur.

CROCKETT, Justice (dissenting):

When a person is arrested and there is reasonable ground for the officer to believe that he is driving while intoxicated, the statute requires that he submit to the tests required by statute or suffer the consequences. If these tests cannot be given within a comparatively short time after the arrest, their usefulness is lost. It is for this reason that I do not believe that this plaintiff, or anyone else, arrested under such circumstances, has any right to impose any such condition as plaintiff attempted to impose here. If the plaintiff was innocent of being intoxicated, the test would have helped her. If she was guilty, that should be ascertained in the interest of law enforcement and public safety.

The arguments supporting the position of the person suspected of being intoxicated, and the contrary arguments, supporting the right and duty of the arresting officer to give the tests, are set forth in the prevailing and dissenting opinions in the recent case of *Gassman v. Dorius*, 543 P.2d 197. In the interest of economy of the printed page, I spare repetition here by referring to and reaffirming my concurrence with what Justice Ellett said in his dissenting opinion in that case.

ELLETT, J., concurs in the dissenting opinion of CROCKETT, J.

MAUGHAN, J., having disqualified himself, does not participate herein.